IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GENUINE PARTS COMPANY, | § | |
| | § | No. 528, 2015 |
| Defendant Below-Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| RALPH ALLAN CEPEC and | § | C.A. No. N15C-02-184 |
| SANDRA FAYE CEPEC, | § | |
| | § | |
| Plaintiffs Below-Appellees. | § | |

Submitted: March 9, 2016
Decided: April 18, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **REVERSED**.

Paul A. Bradley, Esquire, Stephanie A. Fox, Esquire, Maron Marvel Bradley & Anderson LLC, Wilmington, Delaware; James C. Grant, Esquire (*Argued*), Jonathan D. Parente, Esquire, Alston & Bird LLP, Atlanta, Georgia, for Appellant.

Jeffrey S. Goddess, Esquire (*Argued*), Rosenthal, Monhait & Goddess, P.A., Wilmington, Delaware; Lisa W. Shirley, Esquire, Charles E. Soechting, Jr., Esquire, Simon, Greenstone, Panatier & Bartlett, Dallas, Texas, for Appellees.

Kathaleen St. J. McCormick, Esquire, Nicholas J. Rohrer, Esquire, Julia B. Ripple, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware; Andrew J. Pincus, Esquire, Archis A. Parasharami, Esquire, Mayer Brown LLP, Washington, D.C.; Kathryn Comerford Todd, Esquire, Warren Postman, Esquire, U.S. Chamber Litigation Center, Inc., Washington, D.C., *Amicus Curaie* for The Chamber of Commerce of the United States of America.

William W. Erhart, Esquire, Estate and Elder Law Services, Wilmington, Delaware; David W. deBruin, Esquire, The deBruin Firm LLC, Wilmington, Delaware; Meghan Butters Houser, Esquire, Weiss & Saville, P.A., Wilmington, Delaware, *Amicus Curaie* for Delaware Trial Lawyers Association.

John C. Phillips, Jr., Esquire, David A. Bilson, Esquire, Phillips, Goldman, McLaughlin & Hall, P.A., Wilmington, Delaware; Robert L. Willmore, Esquire, Thomas Kinney, Esquire, Crowell & Moring LLP, Washington, D.C., *Amicus Curiae* for Coalition for Litigation Justice, Inc. and American Insurance Association.

**STRINE**, Chief Justice, for the Majority:

# I.    INTRODUCTION

Like every other state in our republic,[1] Delaware requires a foreign corporation that sells any product or service in the state to register to do business and agree to the appointment of a registered agent to receive service of process. In this case, a large Georgia corporation that properly registered to do business in Delaware has been sued in Delaware over claims having nothing to do with its activities in Delaware. Adhering to the interpretation given to our registration statutes—8 *Del. C.* §§ 371 and 376—in *Sternberg v. O'Neil*,[2] our Superior Court held that, notwithstanding the U.S. Supreme Court's decision in *Daimler AG v. Bauman*,[3] the foreign corporation consented to Delaware's general jurisdiction merely by registering to do business in Delaware. This interlocutory appeal raises the singular issue of whether Delaware may exercise general jurisdiction over a foreign corporation for claims having nothing to do with Delaware, as a price for the corporation agreeing simply to be able to do business in Delaware.

---

[1] *See* Tanya J. Monestier, *Registration Statutes, General Jurisdiction, and the Fallacy of Consent*, 36 CARDOZO L. REV. 1343, 1363 (2015) ("Every state has a registration statute that requires corporations doing business in the state to register with the state and appoint an agent for service of process." (footnote omitted)); Matthew Kipp, *Inferring Express Consent: The Paradox of Permitting Registration Statutes to Confer General Jurisdiction*, 9 REV. LITIG. 1, 1 (1990) ("As a condition for doing business within their borders, all states require a foreign corporation to designate a local resident for service of process. This requirement is embodied in what commonly are known as registration statutes." (footnote omitted)).

[2] 550 A.2d 1105 (Del. 1988).

[3] 134 S. Ct. 746 (2014).

We conclude that after *Daimler*, it is not tenable to read Delaware's registration statutes as *Sternberg* did. *Sternberg*'s interpretation was heavily influenced by a prior reading given to § 376 by our U.S. District Court,[4] and like that District Court decision, rested on a view of federal jurisprudence that has now been fundamentally undermined by *Daimler* and its predecessor *Goodyear Dunlop Tires Operations, S.A. v. Brown*.[5] Not only that, *Sternberg* was a case where the exercise of personal jurisdiction over the foreign corporation was proper under the minimum-contacts test, anyway,[6] and where the corporate governance claims at issue were closely connected to the internal affairs of a Delaware corporation.[7] Most important, *Sternberg* represented just one plausible way to read a statute that on its face does not refer explicitly to personal jurisdiction, much less to consent to personal jurisdiction.

---

[4] *See Sternberg*, 550 A.2d at 1115 ("'Section 376 does not in [its] terms limit the amenability of service of a qualified corporation to one which does business in Delaware or with respect to a cause of action arising in Delaware. By the generality of its terms, a foreign corporation qualified in Delaware is subject to service of process in Delaware on any transitory cause of action.'" (quoting *D'Angelo v. Petroleos Mexicanos*, 378 F. Supp. 1034, 1039 (D. Del. 1974))).

[5] 131 S. Ct. 2846 (2011).

[6] *See Sternberg*, 550 A.2d at 1122 ("For more than thirty years, [the foreign parent corporation] has benefited from the protections of the Delaware law in operating [its Delaware subsidiary] for commercial gain, including the benefits afforded to it directly as a shareholder of a Delaware corporation. We conclude that [the foreign corporation] intentionally established and maintained minimum contacts with Delaware by its decision to continue to operate its wholly owned subsidiary . . . as a Delaware corporation." (footnote omitted)).

[7] *See id.* at 1107 (noting that the Ohio corporation's "alleged mismanagement" of its Delaware subsidiary "is the subject of the double derivative suit").

Our duty under our law is to give as much effect as possible to a state statute, where it is constitutional to do so.[8] After *Daimler*, we hold that Delaware's registration statutes must be read as a requirement that a foreign corporation must appoint a registered agent to accept service of process, but not as a broad consent to personal jurisdiction in any cause of action, however unrelated to the foreign corporation's activities in Delaware. Rather, any use of the service of process provision for registered foreign corporations must involve an exercise of personal jurisdiction consistent with the Due Process Clause of the Fourteenth Amendment.

In most situations where the foreign corporation does not have its principal place of business in Delaware, that will mean that Delaware cannot exercise general jurisdiction over the foreign corporation.[9] In that circumstance, the core

---

[8] *See, e.g.*, *Gonzales v. Carhart*, 550 U.S. 124, 153 (2007) ("'[T]he elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.'" (quoting *Edward J. DeBartolo Corp. v. Fla. Gulf Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988))); *I.N.S. v. St. Cyr*, 533 U.S. 289, 299–300 (2001) ("[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is fairly possible, [courts] are obligated to construe the statute to avoid such problems." (internal citations omitted) (internal quotation marks omitted)); *Richardson v. Wile*, 535 A.2d 1346, 1350 (Del. 1988) (citing *Atlantis I Condo. Ass'n v. Bryson*, 403 A.2d 711 (Del. 1979)) ("[W]here a possible infringement of a constitutional guarantee exists, the interpreting court should strive to construe the legislative intent so as to avoid unnecessary constitutional infirmities."); *Maxwell v. Vetter*, 311 A.2d 864, 867 (Del. 1973) ("The Legislature is deemed to have intended to enact a valid and constitutional statute, and the statute will be so construed whenever that construction is possible without doing violence to the legislative intent."); *In re Opinion of the Justices*, 177 A.2d 205, 211 (Del. 1962) ("When [] two constructions of a statute are possible and one of them is unconstitutional, the courts are bound to accept the one which is constitutional."); *Fouracre v. White*, 102 A. 186, 200 (Del. Super. 1917) ("It is the duty of the court to give a statute such a construction as will render it constitutional and operative if it can be done without violence to the language of the statute.").

[9] *See Daimler*, 134 S. Ct. at 761 ("[A nonresident corporation will be subject to general jurisdiction where its] affiliations with the State are so 'continuous and systematic' as to render

statute to evaluate whether the foreign corporation is subject to specific jurisdiction is Delaware's long-arm statute, 10 *Del. C.* § 3104. The long-arm statute operates smoothly in tandem with § 376, which provides that a foreign corporation can be served via its registered agent in the state. Under the long-arm statute, a foreign corporation "submits to the jurisdiction of the Delaware courts" as to any cause of action that arises out of certain enumerated acts by the corporation in this state such as "transact[ing] any business or perform[ing] any character of work or service," or "contract[ing] to supply services or things."[10] Moreover, a plaintiff who brings a cause of action fitting under the long-arm statute against a registered foreign corporation need not use cumbersome means of service of process, but instead can serve the foreign corporation's registered agent, as contemplated in the long-arm statute.[11]

We believe *Sternberg*'s more far-reaching interpretation of § 376 collides directly with the U.S. Supreme Court's holding in *Daimler*, and subjects § 376 to invalidation. In our republic, it is critical to the efficient conduct of business, and therefore to job- and wealth-creation, that individual states not exact unreasonable tolls simply for the right to do business. Businesses select their states of

---

[it] essentially at home in the forum State." (quoting *Goodyear*, 131 S. Ct. at 2851)); *id.* at 761 n.19 (noting the "possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State" (internal citation omitted)).

[10] 10 *Del. C.* § 3104.

[11] *Id.* § 3104(k).

incorporation and principal places of business with care, because they know that those jurisdictions are in fact "home" and places where they can be sued generally.[12] An incentive scheme where every state can claim general jurisdiction over every business that does any business within its borders for any claim would reduce the certainty of the law and subject businesses to capricious litigation treatment as a cost of operating on a national scale or entering any state's market.[13] *Daimler* makes plain that it is inconsistent with principles of due process to exercise general jurisdiction over a foreign corporation that is not "essentially at home" in a state for claims having no rational connection to the state.[14] The foreign corporation in this case does not have its principal place of business in Delaware; nor is there any other plausible basis on which Delaware is essentially its home. Hence, Delaware cannot exercise general jurisdiction over it consistent with principles of due process. Furthermore, the plaintiffs concede that they cannot establish specific jurisdiction over the nonresident defendant under the long-arm statute or principles of due process. Therefore, the plaintiffs' claim must

---

[12] *See Daimler*, 134 S. Ct. at 760–62. *Daimler* relied on *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), which in turn relied on *World-Wide Volkswagen Corp. v. Woodson*, for the proposition that "the Due Process Clause . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." 444 U.S. 286, 297 (1980).

[13] *See id.*

[14] *Id*. at 761.

be dismissed for lack of personal jurisdiction. Accordingly, we reverse the Superior Court's judgment.

## II. BACKGROUND[15]

The personal jurisdiction issue before us arises out of claims for wrongful exposure to asbestos. The plaintiffs-appellants, Ralph and Sandra Cepec, are residents of Georgia. The seven defendants are companies associated with the manufacture, distribution, or installation of products containing asbestos. One of the defendants is Genuine Parts Company. Between approximately 1988 and 1991, Ralph worked for Genuine Parts in a warehouse in Jacksonville, Florida.

In 2015, the Georgia plaintiffs sued the defendants in Delaware. Five of the seven defendants are Delaware corporations. Genuine Parts, however, is a Georgia corporation whose principal place of business is in Atlanta. That is, Genuine Parts is, like the Cepecs, at home in Georgia, not in Delaware. Nationally, Genuine Parts is known for operating NAPA auto-parts stores. It has never had a corporate office in Delaware, does not conduct its board or shareholder meetings in this state, and does not have any officers here. According to Genuine Parts, fewer than 1% of its employees work in Delaware, fewer than 1% of its auto-parts stores are here, and less than 1% of its revenue comes from our state. Genuine Parts is properly

---

[15] Because of the procedural posture of this case, we rely on the version of events set forth in the Cepecs' complaint, which the Superior Court relied on in addressing the motion to dismiss for lack of personal jurisdiction.

6

registered to do business in Delaware under § 371 and has a designated agent for service of process in Wilmington in accordance with § 376.

In their complaint, the Cepecs allege that Genuine Parts acted negligently, willfully and wantonly, and with reckless indifference to Ralph's health and safety by wrongfully exposing Ralph to asbestos during the three years that he worked for the company in Florida, which, combined with other asbestos exposure, caused him to develop malignant mesothelioma and other asbestos-related ailments. They also pled that Genuine Parts "is a foreign corporation doing business in the state of Delaware whose registered agent for service of process is: The Corporation Trust Company."[16]

On June 30, 2015, Genuine Parts moved to dismiss the claims against it for lack of general and specific personal jurisdiction. In response, the Cepecs did not argue that our Superior Court had specific jurisdiction over Genuine Parts under the long-arm statute,[17] but argued that Genuine Parts had consented to Delaware's general jurisdiction by registering to do business in this state and appointing an in-state agent for service of process.

In its August 31, 2015 order denying Genuine Parts' motion to dismiss, the Superior Court agreed with the Cepecs' position that Genuine Parts had consented

---

[16] App. to Opening Br. at 29 (Compl. ¶ 4).
[17] 10 *Del. C.* § 3104.

to general jurisdiction in Delaware merely by complying with § 376.[18]  In reaching

that result, the Superior Court relied on this Court's decision in *Sternberg*.

Although the Superior Court did not discuss *Sternberg* in its order, it expressly

incorporated its analysis from an oral ruling and an order on a motion for

reargument for a different case, where the court explained in greater detail that it

was persuaded to adhere to *Sternberg* by three decisions from the U.S. District

Court for the District of Delaware issued after *Daimler*, which determined that

"express consent—by registering to do business in a state in accordance with state

statutes—remains a valid basis for personal jurisdiction."[19]  Because the Superior

Court based its finding of general jurisdiction over Genuine Parts on a theory of

express consent, it did not conduct a due-process inquiry.  Genuine Parts submitted

an interlocutory appeal of the Superior Court's ruling, which we accepted.

---

[18] Exhibit A to Opening Br. (*In re: Asbestos Litig.*, C.A. No. N15C-02-184, at 3 (Del. Super. Aug. 31, 2015)).

[19] *See In re: Asbestos Litig.*, 2015 WL 5016493, at *2 (Del. Super. Aug. 25, 2015) (citing *Novartis Pharm. Corp. v. Mylan Inc.*, 2015 WL 1246285 (D. Del. Mar. 16, 2015); *Forest Labs., Inc. v. Amneal Pharm. LLC*, 2015 WL 880599 (D. Del. Feb. 26, 2015); *Acorda Therapeutics, Inc. v. Mylan Pharm. Inc.*, 78 F. Supp. 3d 572 (D. Del. 2015),  *aff'd on other grounds*, __ F.3d __, 2016 WL 1077048 (Fed. Cir. Mar. 18, 2016)); *see also* App. to Answering Br. at 29–30 (Hearing Transcript at 40–41, *Hudson v. Int'l Paper Co.*, No. N14C-03-247 (Del. Super. July 9, 2015)) ("On the facts of the complaint here and what I believe to be more persuasive decisions by the District of Delaware, the fact is that *Sternberg v. O'Neil* is still good law here in Delaware.").

## III.   DISCUSSION AND ANALYSIS

We review the Superior Court's denial of Genuine Parts' motion to dismiss for lack of personal jurisdiction *de novo*.[20]

### A.      Basic Principles Of Personal Jurisdiction

Personal jurisdiction refers to the court's power over the parties in the dispute.[21]  There are two bases a state can use to exercise personal jurisdiction over a nonresident defendant.  The first is general jurisdiction, which grants authority to a state's courts to "assert[] jurisdiction over a nonresident defendant on the basis of wholly unrelated contacts with the forum."[22]  This all-purpose jurisdiction exists where a corporation's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."[23]  Until recently, a foreign corporation could be subject to general jurisdiction if it had "continuous and systematic" business contacts in the forum state.[24]  That is, merely doing

---

[20] *See AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 (Del. 2005).

[21] *See, e.g.*, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them.").

[22] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 426 (1984) (Brennan, J., dissenting).

[23] *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 318 (1945).

[24] *See, e.g.*, *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 448 (1952) (finding that "continuous and systematic" corporate activities with Ohio subjected a foreign corporation to general jurisdiction there); *Helicopteros*, 466 U.S. at 415–16 (holding that a CEO's trip to the forum state to negotiate a services contract did not constitute the "continuous and systematic

business in a state was a basis for general jurisdiction there.  But as we will later discuss, two recent decisions of the U.S. Supreme Court established that that is no longer enough.  Courts can also exercise specific jurisdiction over a corporate defendant where the "suit aris[es] out of or relate[s] to the [corporation's] contacts with the forum."[25]

Further, "[b]ecause the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."[26]  And "[b]ecause the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'"[27]

## B.     Delaware's Registration Statutes

To understand this dispute, the Delaware statutes upon which the Cepecs rely for their contention that Genuine Parts is subject to Delaware's general jurisdiction must be understood.  Critical to their argument is this Court's 1988 *Sternberg* decision, which first interpreted Delaware's statute for service of process on a foreign corporation's registered agent as conferring general jurisdiction over the corporation.  We therefore begin by discussing the registration statutes that

general business contacts" required to subject the corporation to general jurisdiction in the state); *see also* Monestier, *supra* note 1, at 1352 ("It was thought that if a corporation was doing business in the forum, in the sense of having continuous and systematic contacts with the forum, it would be subject to general jurisdiction there.").

[25] *Helicopteros*, 466 U.S. at 414 n.8.

[26] *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982).

[27] *Burger King*, 471 U.S. at 472 n.14 (citing *Ins. Corp. of Ireland*, 456 U.S. at 703).

Genuine Parts was required to comply with as the cost of doing any business in Delaware, and the context in which *Sternberg* interpreted them as a basis for general jurisdiction.

To legally do any business in our state, Genuine Parts first had to comply with § 371, which provides in relevant part that:

> No foreign corporation shall do any business in this State, through or by branch offices, agents or representatives located in this State, until it shall have . . . filed in the office of the Secretary of State . . . [a] statement . . . setting forth [] the name and address of its registered agent in this State . . . ."[28]

Genuine Parts also had to agree to have its registered in-state agent accept service of process on its behalf under § 376, which provides in relevant part that:

> All process issued out of any court of this State, all orders made by any court of this State, all rules and notices of any kind required to be served on any foreign corporation which has qualified to do business in this State may be served on the registered agent of the corporation designated in accordance with § 371 of this title, or, if there be no such agent, then on any officer, director or other agent of the corporation then in this State.[29]

In addition to §§ 371 and 376, the *Sternberg* Court's analysis of whether compliance with those statutes conferred general jurisdiction over a foreign corporation involved comparing them to the statutes that apply to foreign corporations that have not registered to do business in Delaware, §§ 382 and 383.

Section 382 provides in pertinent part that:

---

[28] 8 *Del. C.* § 371(b).
[29] *Id.* § 376(a).

11

Any foreign corporation which shall transact business in this State without having qualified to do business under § 371 of this title shall be deemed to have thereby appointed and constituted the Secretary of State of this State its agent for the acceptance of legal process in any civil action, suit or proceeding against it in any state or federal court in this State arising or growing out of any business transacted by it within this State.[30]

And under § 383, unqualified foreign corporations are required to pay certain fees and penalties before maintaining any action or special proceeding in Delaware:

A foreign corporation which is required to comply with §§ 371 and 372 of this title and which has done business in this State without authority shall not maintain any action or special proceeding in this State unless and until such corporation has been authorized to do business in this State and has paid to the State all fees, penalties and franchise taxes for the years or parts thereof during which it did business in this State without authority.[31]

Those four statutes served as the basis for the *Sternberg* Court's holding that the defendant foreign corporation consented to Delaware's general jurisdiction by registering to do business in Delaware and appointing an in-state agent for service of process.[32]

We also note a fifth statute that was not addressed in *Sternberg*, § 381, which provides that once a registered foreign corporation withdraws its registration, its appointment of a designated agent for service of process "shall be revoked, and the corporation shall be deemed to have consented that service of

---

[30] *Id.* § 382(a).
[31] *Id.* § 383(a).
[32] *See Sternberg*, 550 A.2d at 1113–16.

12

process in any action, suit or proceeding based upon any cause of action arising in this State, during the time the corporation was authorized to transact business in this State, may thereafter be made by service upon the Secretary of State."[33]

And although Delaware's long-arm statute, § 3104, was not a part of the analysis in *Sternberg*, it informs our construction of the registration statutes today. The long-arm statute provides in pertinent part that:

> (a) The term "person" in this section includes any natural person, association, partnership or corporation.
> (b) The following acts constitute legal presence within the State. Any person who commits any of the acts hereinafter enumerated thereby submits to the jurisdiction of the Delaware courts.
> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>> (1) Transacts any business or performs any character of work or service in the State;
>> (2) Contracts to supply services or things in this State;
>> (3) Causes tortious injury in the State by an act or omission in this State;
>> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
>> (5) Has an interest in, uses or possesses real property in the State; or
>> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

---

[33] 8 *Del. C.* § 381(c).

*     *     *

(k) This section does not invalidate any other section of the Code that provides for service of summons on nonresidents. This section applies only to the extent that the other statutes that already grant personal jurisdiction over nonresidents do not cover any of the acts enumerated in this section.[34]

## C.    *Sternberg*'s Interpretation Of Delaware's Registration Statutes

Our prior decision in *Sternberg* is heavily relied upon by the Cepecs to argue that Genuine Parts is subject to Delaware's general jurisdiction, so an understanding of what was at stake in that decision and what it held is also critical to our analysis of the core question at issue on this appeal. In *Sternberg*, this Court interpreted § 376 as conferring general jurisdiction over a registered foreign corporation via express consent.[35] But, it is important to view that holding in the context of the rest of the decision. In *Sternberg*, a stockholder of an Ohio parent corporation brought a double-derivative suit against the corporation, claiming that it was mismanaging its wholly owned Delaware subsidiary—i.e., breaching fiduciary duties it allegedly owed as a result of acting as a controlling stockholder of a Delaware corporation.[36] On appeal from the Court of Chancery's dismissal of the complaint, this Court analyzed whether Delaware had personal jurisdiction over the nonresident parent company whose affiliations with our state consisted of managing its Delaware subsidiary for over thirty years, and whose management of

---

[34] 10 *Del. C.* § 3104(a)–(c), (k).
[35] *See Sternberg*, 550 A.2d at 1116.
[36] *Id.* at 1107.

14

the Delaware corporation was the central issue in the dispute.[37]  So *Sternberg* was about the internal affairs of one of our corporate residents and its relationship with its parent corporation—issues that turned on an application of Delaware corporate law.

On those facts, this Court found two alternative bases for personal jurisdiction over the Ohio parent corporation.  Its first ruling, and the one the Cepecs rely on to press their position, is that the foreign corporation consented to the exercise of general jurisdiction by the Delaware courts when it qualified to do business in this state and appointed an in-state agent for service of process, in accordance with Delaware's registration statutes.[38]  In so ruling, *Sternberg* adopted a reading given to § 376 by our U.S. District Court in *D'Angelo v. Petroleos Mexicanos*,[39] and relied on a line of federal case law, including *Neirbo Co. v. Bethlehem Shipbuilding Corp.*[40] and *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*,[41] which held that a foreign corporation that appoints an agent to receive service of process on its behalf in compliance with a state registration statute thereby consents to general jurisdiction

---

[37] *Id.*

[38] *Id.* at 1116.

[39] *D'Angelo*, 378 F. Supp. at 1035–42; *Sternberg*, 550 A.2d at 1116 ("We agree with the Delaware District Court's interpretation in *D'Angelo* of the effect of registration as a foreign corporation in Delaware.").

[40] 308 U.S. 165 (1939).

[41] 243 U.S. 93 (1917).

in the state.[42]  To wit, the *Neirbo* Court held that "[a] statute calling for [the] designation [of an in-state agent for service of process] is constitutional, and the designation of the agent [is] 'a voluntary act[]'" that constituted "actual consent" to general jurisdiction in the state.[43]  Based on the reasoning of those cases, *Sternberg* made an interpretative choice to construe § 376 as a basis for express consent to Delaware's general jurisdiction and to conclude that there was no due-process problem with that construction.[44]  In the alternative, this Court held that the Ohio parent corporation "intentionally established and maintained minimum contacts with Delaware by its decision to continue to operate its wholly owned subsidiary . . . as a Delaware corporation."[45]

*Sternberg*'s holding that a foreign corporation expressly consents to general jurisdiction by agreeing to have its designated in-state agent accept service of process has been the law in Delaware since the late 1980s.  But two recent U.S. Supreme Court decisions, *Goodyear* and *Daimler*, made a major shift in our nation's personal jurisdiction jurisprudence—a shift that undermines the key

---

[42] *See Neirbo*, 308 U.S. at 171–75; *Pa. Fire*, 243 U.S. at 95.

[43] *Neirbo*, 308 U.S. at 175 (quoting *Pa. Fire*, 243 U.S. at 96).

[44] *See Sternberg*, 550 A.2d at 1113 (citing *Pa. Fire*, 243 U.S. at 95) ("If a foreign corporation has expressly consented to the jurisdiction of a state by registration, due process is satisfied and an examination of 'minimum contacts' to find implied consent is unnecessary."); *id.* at 1116 (citing *Neirbo*, 308 U.S. at 170–71; *Pa. Fire*, 243 U.S. at 95; RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 44 (1971)) ("Express consent to jurisdiction by a foreign corporation takes the form of an appointment of a statutory agent to receive service of process in compliance with the statutory requirements of the state in which the corporation desires to do business.").

[45] *Id.* at 1122.

foundation upon which prior federal cases like *Neirbo* and *Pennsylvania Fire* relied.

**D.** ***Goodyear* And *Daimler* Set Due-Process Limits On States' Exercise Of General Jurisdiction Over Non-Residents**

The first recent case to cast doubt on the idea that a state could require a foreign corporation—as a mere price of doing any business in a state in our fifty-state republic—to be subject to its general jurisdiction for any claim, however unrelated to its activities in the forum state, was the U.S. Supreme Court's 2011 *Goodyear* decision. The sad circumstances that led to that case involved the death of two teenage boys in a bus accident outside of Paris, France.[46] The boys' parents, who were residents of North Carolina, filed suit in North Carolina against tire manufacturer Goodyear USA and three of Goodyear's indirect European subsidiaries.[47] Goodyear was an Ohio corporation and the three foreign subsidiaries were organized and based in France, Turkey, and Luxembourg.[48] The plaintiffs alleged that the accident was caused by a defective tire that was manufactured at the plant of Goodyear's Turkish subsidiary.[49] Goodyear did not contest North Carolina's personal jurisdiction over it,[50] but the foreign subsidiaries

---

[46] *Goodyear*, 131 S. Ct. at 2850.
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.*

17

argued that they were not subject to the state's general jurisdiction.[51] The North Carolina Court of Appeals found that North Carolina had general jurisdiction over the foreign subsidiaries because some of the tires the subsidiaries manufactured had reached North Carolina through "the stream of commerce."[52] It was undisputed that the type of tire involved in the accident was not distributed in North Carolina.[53]

In considering whether the defendants were subject to general jurisdiction in North Carolina, the U.S. Supreme Court explained that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."[54] The Court also stated that "[t]he Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant."[55]

The U.S. Supreme Court then found that "the North Carolina court's stream-of-commerce analysis elided the essential difference between case-specific and all-purpose (general) jurisdiction."[56] The Court further explained that "[f]low

---

[51] *Id.*
[52] *Id.* at 2851.
[53] *Id.* at 2852.
[54] *Id.* at 2851 (citing *Int'l Shoe*, 326 U.S. at 317).
[55] *Id.* at 2853 (citing *Shaffer v. Heitner*, 433 U.S. 186, 207 (1977)).
[56] *Id.* at 2855.

of a manufacturer's products into the forum . . . may bolster an affiliation germane to *specific* jurisdiction. . . . But ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant."[57] It also stated that "[a] corporation's 'continuous activity of some sorts within a state,' *International Shoe* instructed, 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'"[58] The Court thus concluded that Goodyear's foreign subsidiaries "are in no sense at home in North Carolina" and that "[t]heir attenuated connections to the State fall far short of the 'the continuous and systematic general business contacts' necessary to empower North Carolina to entertain suit against them on claims unrelated to anything that connects them to the State."[59]

*Goodyear*'s logic was followed in a number of federal personal jurisdiction cases,[60] the most important of which was the U.S. Supreme Court's own 2014 *Daimler* decision. In *Daimler*, the Court confirmed that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose

---

[57] *Id.* (internal citation omitted) (emphasis in original).

[58] *Id.* at 2856 (citing *Int'l Shoe*, 326 U.S. at 318).

[59] *Id.* at 2857 (quoting *Helicopteros*, 466 U.S. at 416).

[60] *See, e.g.*, *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214 (5th Cir. 2012); *Flake v. Schrader-Bridgeport Int'l, Inc.*, 538 F. App'x 604 (6th Cir. 2013); *Abelesz v. OTP Bank*, 692 F.3d 638 (7th Cir. 2012); *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589 (8th Cir. 2011); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011); *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598 (10th Cir. 2012).

jurisdiction there."[61]  *Daimler* involved another set of sad facts.  Twenty-two Argentine residents filed suit in California against a German car manufacturer based in Stuttgart, DaimlerChrysler Aktiengesellschaft, alleging that Daimler's Argentine subsidiary "collaborated with state security forces to kidnap, detain, torture, and kill" Argentine residents who worked for the subsidiary, including certain plaintiffs and plaintiffs' relatives, during a period of military dictatorship known as Argentina's "Dirty War."[62]  The plaintiffs sought to establish personal jurisdiction over Daimler in California based on one of Daimler's other subsidiaries, which was incorporated in Delaware and had its principal place of business in New Jersey, but distributed Daimler-manufactured cars throughout the United States and California.[63]

In its discussion of the history of personal jurisdiction, the *Daimler* Court acknowledged its "post-*International Shoe* opinions on general jurisdiction" and noted that *Perkins v. Benguet Consolidated Mining Co.*[64] "'remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.'"[65]  Then in the heart of its analysis, the U.S. Supreme Court confirmed that the proper inquiry for general jurisdiction under *Goodyear* "is not whether a foreign corporation's in-forum contacts can be

---

[61] *Daimler*, 134 S. Ct. at 760.
[62] *Id.* at 750–51.
[63] *Id.* at 751.
[64] 342 U.S. at 438–50.
[65] *Daimler*, 134 S. Ct. at 755–56 (quoting *Goodyear*, 131 S. Ct. at 2856).

said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to *render [it] essentially at home in the forum State*."[66]  The Court noted that the "paradigm" fora for general jurisdiction over a corporation are its place of incorporation and its principal place of business because those affiliations are "unique" and "easily ascertainable."[67]  But it also acknowledged that general jurisdiction might, "*in an exceptional case*," be proper outside of those one or two places where the corporation's operations are "so substantial and of such a nature as to *render the corporation at home in that State*."[68]  The Court added that "[i]t is one thing to hold a corporation answerable for operations in the forum State, quite another to expose it to suit on claims having no connection whatever to the forum State."[69]

Importantly, the *Daimler* Court rejected the plaintiffs' argument that a corporation is subject to general jurisdiction in every state in which it "engages in a substantial, continuous, and systematic course of business," calling that position

---

[66] *Id.* at 761 (quoting *Goodyear*, 131 S. Ct. at 2851) (internal quotation marks omitted) (emphasis added).

[67] *Id.* at 760.

[68] *Id.* at 761 n.19 (emphasis added).  The only example the U.S. Supreme Court offered of an "exceptional case" is *Perkins*, in which a mining company's operations in the Philippines were temporarily halted during the Second World War and the company's president managed the company's affairs from Ohio, where he maintained an office, kept company files, communicated with employees, and managed the company's funds.  *See id.* at 755–56; *see also Perkins*, 342 U.S. at 447–48.

[69] *Id.* at 761 n.19 (internal citation omitted).

21

"unacceptably grasping."[70] The Court observed that "such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'"[71] The Court also made clear that "[a] corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States."[72]

Against this background of U.S. Supreme Court decisions, we consider the general jurisdiction issues argued by the parties in this appeal.

### E.    The Parties' Contentions

The parties' disagreement over the effect *Daimler* has on the ability of states to condition a foreign corporation's right to do business in the state on being subject to general jurisdiction frames the issue before us. Genuine Parts contends that it would be inconsistent with *Daimler*'s due-process restrictions on general jurisdiction to maintain that a foreign corporation can be subject to Delaware's general jurisdiction simply by registering to do business here and appointing an in-state agent for service of process. Genuine Parts thus asks us to overrule that aspect of *Sternberg*. Genuine Parts also argues that Delaware's registration

---

[70] *Id.* at 761.
[71] *Id.* at 761–62 (quoting *Burger King*, 471 U.S. at 472).
[72] *Id.* at 762 n.20.

statutes do not state, imply, or in any way give notice that the foreign corporation consents to general jurisdiction in Delaware by complying with them.

The Cepecs counter that *Sternberg* remains good law because *Daimler* did not overrule U.S. Supreme Court cases including *Neirbo and Pennsylvania Fire* that held that consent by registration is an independent and valid basis for general jurisdiction.[73]  They also argue, based on those decisions, that the minimum-contacts analysis does not apply when a defendant has consented to jurisdiction.  To support their position, the Cepecs point out that the *Daimler* Court acknowledged that *Perkins* exemplifies a case in which general jurisdiction was proper based on the foreign corporation's contacts with the forum state, even though the foreign corporation did not consent to it.  They argue that the Court was thus mindful of its prior cases—in which general jurisdiction was based on consent—without overruling that precedent, which suggests that the Court did not intend *Daimler* to affect consent-based general jurisdiction.  Finally, the Cepecs contend that because § 376 provides no limits on the authority of a foreign corporation's registered agent to accept service of process for the corporation, that statute confers general jurisdiction over the nonresident corporation, which is the reading that this Court gave to § 376 in *Sternberg*.

---

[73] *See Neirbo*, 308 U.S. at 171–75; *Pa. Fire*, 243 U.S. at 95.

## F.      Personal Jurisdiction In Today's Economy

The *Goodyear* and *Daimler* decisions have generated many potted histories of the complicated origins of personal jurisdiction jurisprudence as it relates to foreign corporations. We do not believe it productive or necessary to engage in a redundant recitation of our own, given the proliferation of excellent summaries.[74] Suffice it to say we no longer live in a time where foreign corporations cannot operate in other states unless they somehow become a resident;[75] nor do we live in a time when states have no effective bases to hold foreign corporations accountable for their activities within their borders.[76] As importantly, we have long ago

---

[74] *See, e.g.*, *Daimler*, 134 S. Ct. at 753–58; *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 631–33 (2d Cir. Feb. 18, 2016); *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 573–76 (9th Cir. 2011); *see also* William V. Dorsaneo, III, Pennoyer *Strikes Back: Personal Jurisdiction in a Global Age*, 3 TEX. A&M L. REV. 1, 3–24 (2015); Bernadette Bollas Genetin, *The Supreme Court's New Approach to Personal Jurisdiction*, 68 SMU L. REV. 107, 113–35 (2015); Monestier, *supra* note 1, at 1351–58; Leo E. Strine, Jr., Lawrence A. Hamermesh & Matthew C. Jennejohn, *Putting Stockholders First, Not the First-Filed Complaint*, 69 BUS. LAW. 1, 25–41 (2013); Charles W. "Rocky" Rhodes, *Nineteenth Century Personal Jurisdiction Doctrine in A Twenty-First Century World*, 64 FLA. L. REV. 387 (2012).

[75] Sarah C. Haan, *Federalizing the Foreign Corporate Form*, 85 ST. JOHN'S L. REV. 925, 926 (2011) ("Today, more than at any time in history, a business entity chartered by one sovereign government is likely to operate within the territory of a different sovereign government and to achieve multiple layers of 'citizenship' through pyramidal ownership arrangements and corporate groups."); Note, *The Internal Affairs Doctrine: Theoretical Justifications and Tentative Explanations for Its Continued Primacy*, 115 HARV. L. REV. 1480, 1488 (2002) ("At one time, a corporation was considered a creature of the state of incorporation; it was legally recognized only in the state of incorporation and therefore subject only to the corporation laws of that state. Modern commercial needs have caused this conception of the corporation to yield to the 'natural entity' theory, which conceives of a corporation as a legal person, with rights virtually equivalent to those of a natural person.").

[76] Every U.S. state has a long-arm statute that enables the state to exercise personal jurisdiction over a nonresident defendant. *See, e.g.*, Stephen E. Sachs, *How Congress Should Fix Personal Jurisdiction*, 108 NW. U. L. REV. 1301, 1346 (2014); Douglas D. McFarland, *Dictum Run Wild:*

become a truly national—even international—economy, and the ability of foreign corporations to operate effectively throughout our nation is critical to our nation's economic vitality and ability to create jobs.

It is in the context of this global economy that the U.S. Supreme Court issued its rulings in *Goodyear* and *Daimler*. In these cases, the Court made clear that it is inconsistent with principles of due process for a corporation to be subject to general jurisdiction in every place it does business.[77] In light of that guidance, we are now faced with whether *Sternberg*'s interpretation of our registration statutes as conferring general jurisdiction over the foreign corporation remains tenable.

### G. Revisiting *Sternberg* In Light of *Daimler*

*Sternberg* involved a careful and accurate recitation of the U.S. Supreme Court's personal jurisdiction jurisprudence before *Goodyear* and *Daimler*. Although that jurisprudence's continued viability was the subject of scholarly debates as of the time of *Sternberg*,[78] the U.S. Supreme Court had yet to cast such

---

*How Long-Arm Statutes Extended to the Limits of Due Process*, 84 B.U. L. REV. 491, 496 (2004) ("Every state today has a long-arm statute (or court rule).").

[77] *See supra* notes 71–72 and accompanying text.

[78] *See Sternberg*, 550 A.2d at 1110 ("[M]any legal scholars are of the view that the 'due process' basis for the *Pennsylvania Fire Ins. Co.* decision (statutory consent in the absence of any other contact) would no longer be viable under the 'due process' standards of *International Shoe* and its progeny (requiring minimum contacts)." (citing Lea Brilmayer, Jennifer Haverkamp, Buck Logan, Loretta Lynch, Steve Neuwirth & Jim O'Brien, *A General Look at General Jurisdiction*, 66 TEX. L. REV. 721, 758–59 (1988); William Lawrence Walker, *Foreign Corporation Laws: A Current Account*, 47 N.C. L. REV. 733, 734–38 (1969))); *see also* D. Craig Lewis, *Jurisdiction*

serious doubt on the underlying principles of long-standing cases like *Pennsylvania Fire* and *Neirbo*. Thus, at the time of *Sternberg*, it was still tenable to rely on those cases for the principle that a state could exercise general jurisdiction over a foreign corporation that complied with a state registration statute without a separate minimum-contacts analysis under the Due Process Clause.

It was against that backdrop that *Sternberg* read § 376 broadly as providing a basis for general jurisdiction, consistent with an earlier decision of the U.S. District Court for the District of Delaware.[79] But notably absent from that prior District Court decision was any reference to explicit statutory language in § 376 that suggested that by registering under § 371 and designating an in-state agent for service of process, the foreign corporation was thereby consenting to the general

---

*Over Foreign Corporations Based on Registration and Appointment of an Agent: An Unconstitutional Condition Perpetuated*, 15 DEL. J. CORP. L. 1, 16–17 (1990) ("Although the [U.S. Supreme] Court subsequently may have harbored doubts about the wisdom of [*Pennsylvania Fire*], the decision has never been overruled. . . . [*Pennsylvania Fire*] may have been correct under the controlling jurisdictional principles when it was issued, but it does not withstand constitutional scrutiny today."); Kipp, *supra* note 1, at 35 ("*Perkins* cited *Pennsylvania Fire Insurance* to support the proposition that continuous and substantial contacts with the forum permitted the assertion of general jurisdiction. This interpretation of *Pennsylvania Fire Insurance*, however, reflected the *Pennoyer* era's requirement of a foreign corporation's local presence, as opposed to the *International Shoe* evaluation of the 'quality and nature' of the defendant's affiliation with the state. *Shaffer*'s repudiation of the 'legal and factual fictions' generated by *Pennoyer* strongly suggests that the *Perkins* view of *Pennsylvania Fire Insurance* did not survive this refutation of *Pennoyer*." (citing *Shaffer*, 433 U.S. at 219 (Brennan, J., concurring in part and dissenting in part))).

[79] *See Sternberg*, 550 A.2d at 1115–16 (citing *D'Angelo*, 378 F. Supp. at 1039).

personal jurisdiction of Delaware.[80]  In fact, unlike the long-arm statute, § 3104, which speaks of personal jurisdiction explicitly, § 376 provides only that a qualified foreign corporation's designated agent can be served with "[a]ll process issued out of any court of this State [and] all orders made by any court of this State . . . ."[81]

Although it is possible, as *Sternberg* did, to read the concept of general jurisdiction into § 376 because it provides for a broad consent to service of process on the foreign corporation's registered agent, it is also possible to give that statute a narrower and constitutionally unproblematic reading.[82]  That reading would be tied into the statute itself, and the conditions that require registration in the first instance.  Under § 371, in order to "do any business in this State, through or by

---

[80] *See D'Angelo*, 378 F. Supp. at 1039.

[81] *Compare* 10 *Del. C.* § 3104 ("[A]ny [corporation that] commits any of the acts enumerated in [§ 3104] thereby submits to the jurisdiction of the Delaware courts. . . .  As to a cause of action brought by any [corporation] arising from any of the acts enumerated in [§ 3104], a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent [commits any of the acts enumerated in § 3104]."), *with* 8 *Del. C.* § 376(a) ("All process issued out of any court of this State, all orders made by any court of this State, all rules and notices of any kind required to be served on any foreign corporation which has qualified to do business in this State may be served on the registered agent of the corporation designated in accordance with § 371 of this title, or, if there be no such agent, then on any officer, director or other agent of the corporation then in this State.").

[82] The U.S. Court of Appeals for the Second Circuit recently took that approach in construing Connecticut's registration statute.  *See Lockheed Martin Corp.*, 814 F.3d at 623 ("[W]e conclude that by registering to transact business and appointing an agent under the Connecticut statutes— which do not speak clearly on this point—[the defendant] did not consent to the state courts' exercise of general jurisdiction over it.  A more sweeping interpretation would raise constitutional concerns prudently avoided absent a clearer statement by the state legislature or the Connecticut Supreme Court.").

branch offices, agents or representatives located in this State,"[83] a foreign corporation must file a statement with the Secretary of State setting forth, among other things, its designated in-state agent, "the business it proposes to do in this State, and a statement that it is authorized to do that business in the jurisdiction of its incorporation."[84]

Further, by way of comparison, foreign corporations that do not properly register are subject to pay fees, penalties, and taxes under § 383 before they can "maintain any action or special proceeding in this State."[85] But unqualified foreign corporations are subject under § 382 to service of process in Delaware through the Secretary of State only for "any civil action, suit or proceeding against [the corporation] in any state or federal court in this State *arising or growing out of any business transacted by it within this State*."[86] Although *Sternberg* read this as suggesting that registered corporations must therefore be subjecting themselves to general jurisdiction by registering because § 376 did not have similar language, that gloss is only a possible one. Another is that the explicit reference to suits "arising or growing out of any business transacted by it within this State"[87] was intended to subject non-registered foreign corporations to equal treatment with registered ones, and described the circumstances where a corporation could be

---

[83] 8 *Del. C.* § 371(b).
[84] *Id.* § 371(b)(2).
[85] *Id.* § 383(a).
[86] *Id.* § 382(a) (emphasis added).
[87] *Id.*

28

deemed by implied consent to be subject to personal jurisdiction to the same extent as a properly registered corporation. Consistent with that reading, the phrase in § 382 is a good proxy for the circumstances that, if extant, require registration under § 371.[88] Section 381 makes the equal treatment point more emphatically by addressing consent and limitations on personal jurisdiction for withdrawing corporations. A withdrawing corporation is "deemed to have consented" to service of process, but only "in any action, suit or proceeding based upon any cause of action arising in this State . . . ."[89] It would therefore make sense to read § 371 as requiring that a foreign corporation have a registered agent that can accept service of process in situations when the very conduct that required registration in the first instance—such as "transact[ing] any business or perform[ing] any character of work or service," or "contract[ing] to supply services or things"[90]—gives rise to a lawsuit.

That reading also fits with the long-arm statute, which explicitly provides that "[t]he term 'person' in this section includes any natural person, association, partnership or corporation."[91] The long-arm statute also provides in explicit terms that a foreign corporation "submits to the jurisdiction of the Delaware courts" in certain enumerated circumstances, which include when a claim arises out of the

---

[88] *See supra* note 83 and accompanying text.
[89] 8 *Del. C.* § 381(c).
[90] 10 *Del. C.* § 3104.
[91] *Id.* § 3104(a).

corporation doing business, or contracting to supply goods or services, in the state.[92]  And in the case of a registered foreign corporation, a plaintiff can effect service using § 376,[93] and need not use the mailing procedure in the long-arm statute.[94]  If § 376 alone could serve as a basis for general jurisdiction, the specific jurisdiction provisions in the long-arm statute would apply only to foreign corporations that have not registered in the state; instead § 3104 broadly applies to "*any* natural person, *association*, *partnership* or *corporation*."[95]  Further, Pennsylvania, which is the only state that currently expressly provides by statute that registering to do business in the state is a sufficient basis for general jurisdiction over a foreign corporation, has set forth this consequence of registration in its long-arm statute, not its registration statute.[96]

---

[92] *Id.* § 3104(c).

[93] *See id.* § 3104(k) ("[Section 3104] does not invalidate any other section of the Code that provides for service of summons on nonresidents.  [Section 3104] applies only to the extent that the other statutes that already grant personal jurisdiction over nonresidents do not cover any of the acts enumerated in [§ 3104].").

[94] *See id.* § 3104(d)(3) ("When the law of this State authorizes service of process outside the State, the service, when reasonably calculated to give actual notice, may be made: . . .  By any form of mail addressed to the person to be served and requiring a signed receipt.").

[95] *Id.* § 3104(a) (emphasis added).  Our sister court recently made a similar point in its analysis of Connecticut's registration statute and its long-arm statute for service of process on foreign corporations.  *Lockheed Martin Corp.,* 814 F.3d at 636 ("[I]f the mere maintenance of a registered agent to accept service under [Connecticut's registration statute] effected an agreement to submit to general jurisdiction, it seems to us that the specific jurisdiction provisions of the long-arm statute, ([the service of process statute] for registered corporations), wouldn't be needed except with regard to *un* registered corporations: Registered corporations would be subject to jurisdiction with regard to all matters simply by virtue of process duly served on its appointed agent.").

[96] *See* 42 Pa. Cons. Stat. § 5301(a)(2)(i) ("The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such

A narrower reading of § 376 also avoids the perverse result of subjecting foreign corporations that lawfully do business in Delaware to an overreaching consequence—general jurisdiction—that does not apply to foreign corporations that do business in Delaware without properly registering and are only subject to specific jurisdiction in Delaware under § 382.[97] The same perverse result would occur with withdrawing corporations under § 381.[98] When a narrower reading is given to § 376 and that statute is read in concert with § 3104, foreign corporations that properly registered or that wish to withdraw registration in Delaware are given equitable treatment with scofflaws, not harsher treatment. That narrower reading also makes sense of both § 3104 and § 371, because § 371 requires a foreign corporation that engages in certain categories of business in Delaware to register and appoint an agent for service of process.[99] Working in tandem, § 3104 thus provides for personal jurisdiction over registered businesses when causes of action arise out of their activities in Delaware, with plaintiffs being able to use the

---

person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative: . . . Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.").

[97] *See* 8 *Del. C.* §§ 376, 382(a); *see also AstraZeneca AB v. Mylan Pharm., Inc.*, 72 F. Supp. 3d 549, 557 (D. Del. 2014) ("[A] holding [that compliance with Delaware's registration statutes subjects foreign corporations to general jurisdiction] would lead to perverse incentives: foreign companies that comply with the statute in order to conduct business lawfully are disadvantaged, whereas those who do not register and do business in Delaware illegally are immune."), *aff'd on other grounds sub. nom. Acorda Therapeutics, Inc. v. Mylan Pharm., Inc.*, __F.3d __, 2016 WL 1077048 (Fed. Cir. Mar. 18, 2016).

[98] *See* 8 *Del. C.* § 381(c).

[99] *See id.* § 371(b).

registered agent designated under § 371 as the recipient of process in accordance with § 376 and § 3104(k).[100]

Most important of all, after *Goodyear* and *Daimler*, this narrower reading of § 376 has the intuitively sensible effect of not subjecting properly registered foreign corporations to an "unacceptably grasping" and "exorbitant" exercise of jurisdiction, consistent with *Daimler*'s teachings.[101] Under a broad reading of § 376, any foreign corporation seeking to sell any product or provide any service in Delaware must, as a price to doing so lawfully, be deemed to have consented to Delaware exercising general jurisdiction over it—i.e., to Delaware exercising jurisdiction in cases having nothing at all to do with the foreign corporation's activities in or even directed to Delaware. Nothing in the text of § 376 compels such a broad reading of that statute.

For present purposes, however, what is most important is not whether *Sternberg* was somehow incorrect; the question is how § 376 should be interpreted in this case. The reality is that *Sternberg*'s ruling on § 376 was not necessary to the resolution of the case because the Court also found that the foreign corporation had sufficient minimum contacts with Delaware through owning and managing its Delaware subsidiary for over thirty years to provide a constitutional basis for

---

[100] 10 *Del. C.* § 3104(k) ("This section does not invalidate any other section of the Code that provides for service of summons on nonresidents. This section applies only to the extent that the other statutes that already grant personal jurisdiction over nonresidents do not cover any of the acts enumerated in this section.").

[101] *See Daimler*, 134 S. Ct. at 761.

specific jurisdiction.[102]   The other reality is that *Sternberg*'s construction of § 376

was strongly influenced by prior U.S. Supreme Court jurisprudence whose

dependability has been undermined by *Daimler*.[103]

Our duty is to construe a statute of our state in a manner consistent with the

U.S. Constitution, when it is possible to do so with no violence to its plain

meaning.[104]   Nothing in the registration statutes explicitly says that a foreign

corporation registering thereby consents to the personal jurisdiction of this state.[105]

Nothing in the statutes explicitly says that by having to register in order to "do any

business in this State, through or by branch offices, agents or representatives

---

[102] *Sternberg*, 550 A.2d at 1125–26 ("[F]airness and justice permit jurisdiction to be asserted by Delaware under the totality of the circumstances of this case.  We find that the exercise of specific jurisdiction in this case is consistent with the requirements of due process.  We hold that [the defendant's] ownership of [its subsidiary] is a minimum contact with Delaware which is sufficient to support an exercise of specific jurisdiction by the Delaware Courts over [the defendant] to hear and decide [the plaintiff's] double derivative complaint.  This holding is an independent and alternative basis for reversing the [trial court's] decision not to exercise specific jurisdiction over [the defendant].").

[103] *See supra* notes 71–72 and accompanying text; *Daimler*, 134 S. Ct. at 761 n.18 ("[U]nadorned citations [to cases upholding general jurisdiction based on a corporation's continuous operations in the state] decided in the era dominated by *Pennoyer*'s territorial thinking, should not attract heavy reliance today." (internal citations omitted)); *see also Shaffer*, 433 U.S. at 212 & n.39 (providing that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny" and that "[t]o the extent that prior decisions are inconsistent with this standard, they are overruled"); *Lockheed Martin Corp.*, 814 F.3d at 638–39 ("*Pennsylvania Fire* is now simply too much at odds with the approach to general jurisdiction adopted in *Daimler* to govern as categorically . . . , the Supreme Court's analysis in recent decades, and in particular in *Daimler* and *Goodyear*, forecloses [] an easy use of *Pennsylvania Fire* to establish general jurisdiction over a corporation based solely on the corporation's registration to do business and appointment of an agent under a state statute lacking explicit reference to any jurisdictional implications.").

[104] *See supra* note 8.

[105] *Cf. Forest Labs., Inc.*, 2015 WL 880599, at *10 ("Neither Section 371 nor Section 376 of the Delaware registration statute expressly sets out the types of actions for which registration of an agent for service of process shall be effective.").

located in this State,"[106] and to appoint a registered agent in the state to receive service of process, that meant a foreign corporation was waiving any objection to personal jurisdiction for causes of action not arising out of the conduct in Delaware that gave rise to the registration requirement.

In light of *Daimler*, § 376 can be given a sensible reading by construing it as requiring a foreign corporation to allow service of process to be made upon it in a convenient way in proper cases, but not as a consent to general jurisdiction. Rather, a foreign corporation would have the protection of the Due Process Clause if a plaintiff tried to use § 376 by suing the corporation for a cause of action that was not addressed by the long-arm statute, which, among other things, essentially tracks the circumstances that require registration under § 371.

By this reading, plaintiffs with a fair basis to subject a foreign corporation to suit in Delaware may do so, but plaintiffs who do not will not. This reading accords with *Daimler* and common sense. Delaware is a state of fewer than one million people.[107] Our citizens benefit from having foreign corporations offer their goods and services here. If the cost of doing so is that those foreign corporations will be subject to general jurisdiction in Delaware, they rightly may choose not to do so.

---

[106] 8 *Del. C.* § 371(b).

[107] *See QuickFacts Delaware*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/table/PST045215/10 (last visited Apr. 4, 2016) (estimating Delaware's population to be 945,934 people as of July 1, 2015).

Moreover, in our federal republic, exacting such a disproportionate toll on commerce is itself constitutionally problematic.[108] Such an exercise of overreaching by Delaware will also encourage other states to do the same. Every state in the union, and the District of Columbia, has enacted a registration statute that requires foreign corporations to register to do business and appoint an in-state agent for service of process.[109] As the home of a majority of the United States' largest corporations, Delaware has a strong interest in avoiding overreaching in this sensitive area.[110] If all of our sister states were to exercise general jurisdiction over our many corporate citizens, who often as a practical matter must operate in all fifty states and worldwide to compete, that would be inefficient and reduce legal certainty for businesses. Human experience shows that "grasping"[111]

---

[108] *See, e.g.*, *United States v. Lopez*, 514 U.S. 549, 579–80 (1995) ("One element of our dormant Commerce Clause jurisprudence has been the principle that the States may not impose regulations that place an undue burden on interstate commerce, even where those regulations do not discriminate between in-state and out-of-state businesses."); *Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888, 894 (1988) (holding that an Ohio tolling statute violated the Commerce Clause because it gave nonresident corporations the choice between being subject to general jurisdiction in the state by appointing an in-state agent for service of process or being subject to a tolling of the statute of limitations on claims against them); *see also* T. Griffin Vincent, *Toward a Better Analysis for General Jurisdiction Based on Appointment of Corporate Agents*, 41 BAYLOR L. REV. 461, 485 (1989) ("Predicating jurisdiction solely on a corporate defendant's designation of a resident agent for receipt of service may be an impermissible burden on interstate commerce. Although such an exercise of judicial jurisdiction is not directly discriminatory, there is no compelling state interest justifying general jurisdiction based on such tenuous corporate contacts.").

[109] *See, e.g.*, Monestier, *supra* note 1, at 1363 (collecting statutes).

[110] *See, e.g.*, DEL. DIV. OF CORPS., 2013 ANNUAL REPORT 2 (2014), http://corp.delaware.gov/ Corporations_2013%20Annual%20Report.pdf ("Delaware remains the chosen home of more than half of all U.S. publicly traded companies and 65% of Fortune 500 companies are incorporated in Delaware.").

[111] *Daimler*, 134 S. Ct. at 761.

behavior by one, can lead to grasping behavior by everyone, to the collective detriment of the common good.  It is one thing for every state to be able to exercise personal jurisdiction in situations when corporations face causes of action arising out of specific contacts in those states; it is another for every major corporation to be subject to the general jurisdiction of all fifty states.  Theoretically, under the Cepecs' position, major Delaware public corporations with national markets could be sued by its stockholders on an internal affairs claim in any state in the nation because the corporations have had to register to do business in every state.  And in fact, many post-*Daimler* decisions involved situations where plaintiffs sought to subject a Delaware corporation to the general jurisdiction of a state that had no relation to the cause of action and was not the corporation's principal place of business.[112]  *Daimler* rejected the notion that a corporation that does business in many states can be subject to general jurisdiction in all of them.[113]  Under a sensible goose-and-gander approach, Delaware should be prudent and

---

[112] *See, e.g.*, *Pitts v. Ford Motor Co.*, 127 F. Supp. 3d 676, 680 (S.D. Miss. Aug. 26, 2015) (plaintiff seeking to establish general jurisdiction in Mississippi over a Delaware corporation whose principal place of business is in Michigan); *Keeley v. Pfizer Inc.*, 2015 WL 3999488, at *1 (E.D. Mo. July 1, 2015) (plaintiff seeking to establish general jurisdiction in Missouri over a Delaware corporation headquartered in New York); *Perrigo Co. v. Merial Ltd.*, 2015 WL 1538088, at *1, *3 (D. Neb. Apr. 7, 2015) (plaintiff seeking to establish general jurisdiction in Nebraska over a Delaware corporation whose principal place of business is outside of Nebraska); *McCourt v. A.O. Smith Water Prods. Co.*, 2015 WL 4997403, at *1 (D.N.J. Aug. 20, 2015) (plaintiff arguing that New Jersey has general jurisdiction over a Delaware corporation whose principal place of business is in Massachusetts).
[113] *See supra* notes 71–72 and accompanying text.

proportionate in exercising jurisdiction over foreign corporations, and a narrower

reading of § 376 accomplishes that.[114]

## H. The Tension Created By *Daimler*'s Due-Process Limits On General Jurisdiction Cannot Be Ignored

We acknowledge that some courts have maintained in *Daimler*'s wake that

implied consent by virtue of simple registration to do business remains a

constitutionally valid basis for general jurisdiction over a nonresident

corporation.[115] Our own U.S. District Court, for example, has split on this issue.[116]

---

[114] We note that at least one state's registration statute expressly provides that appointing an in-state agent for service of process does not by itself constitute consent to general jurisdiction. Miss. Code Ann. § 79-35-15 ("The appointment or maintenance in this state of a registered agent does not by itself create the basis for personal jurisdiction over the represented entity in this state."). Adding similar language to § 371 would help dispel any potential uncertainty on the part of foreign corporations as to the effect of complying with Delaware's registration statutes on personal jurisdiction.

[115] *See, e.g.*, *Perrigo Co.*, 2015 WL 1538088, at *7 ("*Daimler* only speaks to whether general jurisdiction can be appropriately exercised over a foreign corporation that *has not consented to suit* in the forum. It does nothing to affect the long-standing principle that a defendant may consent to personal jurisdiction." (internal citations omitted) (emphasis in original)); *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 469 (D.N.J. 2015) ("[D]esignation of an in-state agent for service of process in accordance with a state registration statute may constitute consent to personal jurisdiction, if supported by the breadth of the statute's text or interpretation."); *Senju Pharm. Co. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 437 (D.N.J. 2015) ("[*Daimler*] did not disturb the consent-by-in-state service rule . . . ."); *Beach v. Citigroup Alt. Invs. LLC*, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014) ("Notwithstanding these limitations, a corporation may consent to jurisdiction in New York under [New York's general jurisdiction statute] by registering as a foreign corporation and designating a local agent."); *see also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 137 n.15 (2d Cir. 2014) (noting in dicta that "[t]he district court may also consider [on remand] whether [the defendant bank] has consented to personal jurisdiction in New York by applying for authorization to conduct business in New York and designating the New York Secretary of State as its agent for service of process").

[116] *Compare AstraZeneca AB*, 72 F. Supp. 3d at 556–57 ("In light of the holding in *Daimler*, the court finds that [the defendant corporation's] compliance with Delaware's registration statutes—mandatory for *doing business* within the state—cannot constitute consent to jurisdiction, and the Delaware Supreme Court's decision in *Sternberg* can no longer be said to comport with federal due process. . . . Administrative statutes like Delaware's sections 371 and 376 merely outline

Two conflicting Delaware District Court decisions were recently addressed by the U.S. Court of Appeals for the Federal Circuit on interlocutory appeal, but the majority of the panel declined to address the issue of general jurisdiction.[117] One of the three judges, however, concurred in the judgment but wrote separately to express his view that the defendant was subject to Delaware's general jurisdiction by virtue of having registered to do business in our state on the ground that "*Daimler* did not overrule the line of Supreme Court authority establishing that a corporation may consent to jurisdiction over its person by choosing to comply with a state's registration statute."[118] But, the majority of federal courts that have considered the issue of whether consent by registration remains a constitutional basis for general jurisdiction after *Daimler* have taken the position that we adopt.[119]

procedures for doing business in the state; compliance does not amount to consent to jurisdiction or waiver of due process.") (emphasis in original), *aff'd on other grounds sub. nom. Acorda Therapeutics, Inc.*, __F.3d __, 2016 WL 1077048, *with Acorda Therapeutics, Inc.*, 78 F. Supp. 3d at 588 ("*Daimler* does not eliminate consent as a basis for a state to establish general jurisdiction over a corporation which has appointed an agent for service of process in that state, as is required as part of registering to do business in that state."), *aff'd on other grounds*, __F.3d __, 2016 WL 1077048, *Novartis Pharm. Corp.*, 2015 WL 1246285, at *3–4 (finding that, even after *Daimler*, registering to do business and appointing an in-state agent for service of process constitutes consent to general jurisdiction in Delaware), *and Forest Labs., Inc.*, 2015 WL 880599, at *12–15 (same).

[117] *Acorda Therapeutics Inc.*, __ F.3d at __, 2016 WL 1077048, at *1 ("On interlocutory appeal, we affirm, holding that [the defendant] is subject to specific personal jurisdiction in these cases. We do not address the issue of general personal jurisdiction.").

[118] *Id.* at *10 (O'Malley, J., concurring).

[119] *See, e.g.*, *U.S. Bank Nat. Ass'n v. Bank of Am., N.A.*, 2015 WL 5971126, at *6 (S.D. Ind. Oct. 14, 2015) (rejecting the argument that a foreign corporation "waived its objection to personal jurisdiction by registering to do business in Indiana and designating an agent for purposes of service of process in the State" and finding that "registering to do business in Indiana and also appointing an agent for purposes of service of process, does not establish personal jurisdiction over a corporation"); *Pitts*, 127 F. Supp. 3d at 483–84 (quoting *Daimler*, 134 S. Ct. at 760–61)

The decisions that have read *Daimler* differently than we do stress that *Daimler* did not reach out and explicitly overrule older precedent in stark tension with its reasoning.[120] But, that reality does nothing to relieve that tension, or to

(finding that a foreign corporation that registered to do business in Mississippi, appointed an in-state agent for service of process, and was carrying on operations in the state, was "at most 'doing business' in Mississippi," and did not have sufficient affiliations with the state to render it "at home" there for purposes of general jurisdiction); *Keeley*, 2015 WL 3999488, at *4 ("If following [corporate registration] statutes creates jurisdiction, national companies would be subject to suit all over the country. This result is contrary to the holding in *Daimler* that merely doing business in a state is not enough to establish general jurisdiction. . . . A defendant's consent to jurisdiction must satisfy the standards of due process and finding a defendant consents to jurisdiction by registering to do business in a state or maintaining a registered agent does not." (internal citations omitted)); *Neeley v. Wyeth LLC*, 2015 WL 1456984, at *3 (E.D. Mo. Mar. 30, 2015) ("Foreign corporations authorized to transact business in Missouri are also required to maintain a registered agent in the state. Therefore, to extend the Plaintiff's reasoning to its natural conclusion, every foreign corporation transacting business in the state of Missouri would be subject to general jurisdiction here. *Daimler* clearly rejects this proposition." (internal citation omitted)); *McCourt*, 2015 WL 4997403, at *4 ("The single fact that Defendant registered to do business in New Jersey is insufficient to conclude that it 'consented' to jurisdiction here."); *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015) ("After *Daimler* . . . the mere fact of [the defendant's] being registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation [n]or its principal place of business." (internal citation omitted)); *Hazim v. Schiel & Denver Publ'g Ltd.*, 2015 WL 5227955, at *4 (S.D. Tex. Sept. 8, 2015) ("[E]ven if [the plaintiff] made [a] showing [that the foreign corporation had a registered agent in Texas], effecting service in the forum State on a registered corporate agent is not enough to show personal jurisdiction over the nonresident corporation."); *see also Lockheed Martin Corp.*, 814 F.3d at 640 ("If mere registration and the accompanying appointment of an in-state agent—without an express consent to general jurisdiction—nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler*'s ruling would be robbed of meaning by a back-door thief.").

[120] *See, e.g.*, *Acorda Therapeutics, Inc.*, 78 F. Supp. 3d at 590 ("The Supreme Court in *Daimler* did not reference [cases dealing with consent to general jurisdiction]. It follows that *Daimler* did not overrule or even criticize these precedents."); *Novartis Pharm. Corp.*, 2015 WL 1246285, at *3 ("I do not think it appropriate for me to 'overrule' Supreme Court precedent that the Supreme Court has not overruled."); *Forest Labs., Inc.*, 2015 WL 880599, at *7 ("[T]he Supreme Court has never explicitly stated that the holdings in *Pennsylvania Fire* and *Neirbo* were overruled by *International Shoe*."); *Otsuka Pharm. Co.*, 106 F. Supp. 3d at 468 ("[T]he Supreme Court has never explicitly overruled the holdings of [cases holding that consent by registration is a valid basis for general jurisdiction], and in the absence of such declaration, the Supreme Court directs the continued application of its precedents.").

obscure another reality, which is that the older case law was rooted in an era where foreign corporations could not be sued in other states unless there was some fictional basis to find them present there.[121] And to give some credit to our predecessor generations, plaintiffs typically did not sue defendants in fora that had no rational relation to causes of action; the increasing embrace of that practice among segments of the plaintiffs' bar has instead built over recent decades.[122]

---

[121] *See, e.g.*, *Burnham v. Superior Court*, 495 U.S. 604, 617–18 (1990) ("[In the past, s]tates required, for example, that nonresident corporations appoint an in-state agent upon whom process could be served as a condition of transacting business within their borders, and provided in-state 'substituted service' for nonresident motorists who caused injury in the State and left before personal service could be accomplished. We initially upheld these laws under the Due Process Clause on grounds that they complied with *Pennoyer*'s rigid requirement of either 'consent,' or 'presence[.]' As many observed, however, the consent and presence were purely fictional." (internal citations omitted)); *Int'l Shoe*, 326 U.S. at 316–17 ("Since the corporate personality is a fiction . . . it is clear that unlike an individual its 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. . . . [T]he terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process." (internal citation omitted)); *Shaffer*, 433 U.S. at 219 (Brennan, J., concurring in part and dissenting in part) ("[T]he minimum-contacts analysis developed in [*International Shoe*] represents a far more sensible construct for the exercise of state-court jurisdiction than the patchwork of legal and factual fictions that has been generated from the decision in [*Pennoyer*]."); *see also* Rhodes, *supra* note 74, at 393–94 ("Corporate defendants posed [] conceptual challenges to [the] power-based jurisdictional regime. Because a corporation, as an intangible entity, could not truly be 'physically present' within the state's borders, jurisdiction over a corporation depended on various fictions. One such jurisdictional fiction was that by designating a corporate agent within the state, the corporation consented that in-state service of process on the agent established its amenability." (footnotes omitted)).

[122] *See* Alan O. Sykes, *Transnational Forum Shopping As A Trade and Investment Issue*, 37 J. LEGAL STUD. 339, 339 (2008) ("Forum shopping by tort plaintiffs is commonplace in the American legal system."); Douglas G. Smith, *Resolution of Mass Tort Claims in the Bankruptcy System*, 41 U.C. DAVIS L. REV. 1613, 1621 (2008) ("[Mass tort] claims have gravitated toward certain jurisdictions that plaintiffs believe are more favorable. As a result, the bulk of the litigation has occurred in a handful of jurisdictions. . . . [E]xtensive and widespread forum shopping continues." (footnotes omitted)); Lester Brickman, *Lawyers' Ethics and Fiduciary Obligation in the Brave New World of Aggregative Litigation*, 26 WM. & MARY ENVTL. L. &

Some of the decisions that suggest that *Daimler* does not prevent states from exacting general jurisdiction as a price for merely doing business also confuse two issues that are, in our view, fundamentally distinct. These cases suggest that if states cannot condition a foreign corporation's right to do business on consent to general jurisdiction, that it therefore logically follows that parties cannot rely in commerce on the enforceability of forum-selection clauses that provide explicitly for a consent to personal jurisdiction.[123]  Candidly, we view these as distinct categories.  In the first case, the argument is that a business somehow must agree to being subject to general jurisdiction in every state in our nation, as a condition to doing business nationally.  *Daimler*'s reasoning indicates that such a grasping assertion of state authority is inconsistent with principles of due process, and

POL'Y REV. 243, 258 (2001) ("While forum shopping has always been an occasional form of litigation abuse, with the increased frequency of mass tort litigation, forum shopping abuse has become both more prevalent and has taken on new importance."); *see also* Matthew D. Cain & Steven Davidoff Solomon, *A Great Game: The Dynamics of State Competition and Litigation*, 100 IOWA L. REV. 465, 468, 477 (2015) (finding, based on an analysis of "1117 public transactions comprising all takeover deals announced and completed between 2005 and 2011 having a transaction value greater than $100 million," that in 2005, "multi-state litigation occurred in 8.3% of all transactions that resulted in litigation" and that by 2011, that number rose to 53%); Minor Myers, *Fixing Multi-Forum Shareholder Litigation*, 2014 U. ILL. L. REV. 467, 479–99 (demonstrating the prevalence of multi-forum litigation through empirical data on multi-forum shareholder litigation).

[123] *See, e.g.*, *Acorda Therapeutics, Inc.*, 78 F. Supp. 3d at 591 ("*Daimler* [did not mean] to eliminate consent as a basis for jurisdiction.  Such a holding would threaten to fundamentally alter the personal jurisdiction defense from a waivable to a non-waivable right, a characteristic of the defense that was not before the *Daimler* Court and is not explicitly addressed in its opinion. The scope of a corporation's right to consent to jurisdiction in the courts of a particular state has never been thought to be limited to any certain number of states.  It may well be that a corporation will voluntarily consent—whether by compliance with state registration statutes, by contract, or by some other means—to the jurisdiction of courts in many more states than the number of states in which that corporation might be found to be 'at home' for purposes of general jurisdiction." (footnote omitted)).

impliedly, with interstate commerce.[124]  Moreover, a foreign corporation's consent

to personal jurisdiction cannot be coerced or conditioned on the corporation

waiving its right not to be subject to all-purpose jurisdiction in all but a few places

where it has sufficient contacts.[125]  By contrast, nothing in *Daimler* is at all in

tension with the traditional idea that a party to a non-adhesion contract can subject

itself to personal jurisdiction via a forum-selection clause.[126]  Notably, in *M/S*

*Bremen v. Zapata Off-Shore Co.*,[127] the U.S. Supreme Court held that a

forum-selection clause in a freely negotiated agreement is "prima facie valid and

---

[124] *See supra* notes 70–72 and accompanying text; *see also supra* note 108 and accompanying text.

[125] *See, e.g.*, *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2594 (2013) ("[Under the unconstitutional conditions doctrine,] 'the government may not deny a benefit to a person because he exercises a constitutional right.' . . . [T]he [doctrine] vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." (quoting *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 545 (1983))); *Frost v. R.R. Comm'n of Cal.*, 271 U.S. 583, 593–94 (1926) ("[A]s a general rule, the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose.  But the power of the state in that respect is not unlimited, and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights.  If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all.  It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence."); *see also* Kathleen M. Sullivan, *Unconstitutional Conditions*, 102 Harv. L. Rev. 1413, 1421–22 (1989) ("Unconstitutional conditions problems arise when government offers a benefit on condition that the recipient perform or forego an activity that a preferred constitutional right normally protects from government interference."); Richard A. Epstein, *Unconstitutional Conditions, State Power, and the Limits of Consent*, 102 Harv. L. Rev. 4, 6–7 (1988) ("In its canonical form, [the unconstitutional conditions] doctrine holds that even if a state has absolute discretion to grant or deny a privilege or benefit, it cannot grant the privilege subject to conditions that improperly 'coerce,' 'pressure,' or 'induce' the waiver of constitutional rights.").

[126] *See, e.g.*, *Burger King Corp.*, 471 U.S. at 473 n.14 ("[I]n the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction.  Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." (internal citation omitted)).

[127] 407 U.S. 1 (1972).

should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances" where there was "strong evidence that the [] clause was a vital part of the agreement."[128] Of equal note is the reality that forum-selection clauses almost always involve parties being subject to personal jurisdiction in the chosen forum over a particular class of claims—that is, they involve consent to specific jurisdiction as to the claims outlined in the agreement.[129] *Daimler* does not suggest that this traditional avenue of consent to personal jurisdiction is no longer viable.

---

[128] *Id.* at 10, 14; *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991) (finding that a forum-selection clause in a commercial cruise passage contract ticket was reasonable and enforceable, and that the respondents "have not satisfied the 'heavy burden of proof,' required to set aside the clause on grounds of inconvenience"); Monestier, *supra* note 1, at 1385–86 ("[A] party who has agreed to a forum selection clause, and thereby consented to the jurisdiction of a certain court, may be able to escape the clause's effect by demonstrating that enforcement would be unreasonable. Although claims that a forum selection clause is unreasonable are not often successful, the rule nonetheless provides an important escape hatch for a party resisting enforcement of a forum selection clause. . . . Additionally, the Supreme Court in *Bremen* reaffirmed that traditional contract doctrines such as 'fraud, undue influence, or overweening bargaining power' are also available to a party seeking to avoid a forum selection clause. Other contract doctrines such as mistake, public policy, and unconscionability could also be used by litigants to avoid the effects of a forum selection clause. In cases where a corporation 'consents' to jurisdiction by the act of registering to do business, there are no escape hatches.").

[129] *See, e.g.*, Monestier, *supra* note 1, at 1383–84 (noting that the most important distinction between consent based on a forum-selection clause or voluntary submission, and consent by registration, is that the former constitutes limited consent "to a particular dispute involving a particular plaintiff" whereas the latter "extends to any and all disputes involving any and all plaintiffs" (emphasis omitted)).

## IV.  CONCLUSION

In light of the U.S. Supreme Court's clarification of the due-process limits on general jurisdiction in *Goodyear* and *Daimler*, we read our state's registration statutes as providing a means for service of process and not as conferring general jurisdiction.  Accordingly, we reverse the Superior Court's judgment that denied Genuine Parts' motion to dismiss the claims against it for lack of personal jurisdiction.

**VAUGHN**, Justice, dissenting:

I agree with those federal judicial officers who have concluded that *Daimler* and *Goodyear* have no effect upon general jurisdiction that is based upon consent through corporate registration statutes.[130] *Daimler* and *Goodyear* involved only general jurisdiction by presence where the corporate defendant had not consented to jurisdiction. Just last month, a circuit court judge of the Federal Circuit wrote in a concurring opinion mentioned by the Majority that "*Daimler* did not overrule the line of Supreme Court authority establishing that a corporation may consent to jurisdiction over its person by choosing to comply with a state's registration

---

[130] *See Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 2016 WL 1077048, at *10 (Fed. Cir. Mar. 18, 2016) (O'Malley, J., concurring), *aff'g* 78 F. Supp. 3d 572, 587 (D. Del. 2015); *Novartis Pharm. Corp. v. Mylan Inc.*, 2015 WL 1246285, at *3–4 (D. Del. Mar. 16, 2015); *Forest Labs, Inc. v. Amneal Pharm, LLC*, 2015 WL 880599, at *12 (D. Del. Feb. 26, 2015); *see also Helsinn Healthcare S.A. v. Hospira, Inc.*, 2016 WL 1338601, at *3 (D.N.J. Apr. 5, 2016) ("*Daimler* did not address the issue of consent-based jurisdiction . . . ."); *In re Syngenta AG MIR 162 Corn Litig.*, 2016 WL 1047996, at *3 (D. Kan. Mar. 11, 2016) ("The Court is not prepared to ignore such Supreme Court precedent based on speculation about how the Court might view jurisdiction in contexts other than that discussed in *Daimler*."); *Mitchell v. Eli Lilly & Co.*, 2016 WL 362441, at *5–9 (E.D. Mo. Jan. 29, 2016) (rejecting the argument that *Daimler* altered general jurisdiction by consent); *Grubb v. Day to Day Logistics, Inc.*, 2015 WL 4068742, at *4 (S.D. Ohio July 2, 2015) (declining to extend *Daimler* to consent); *Fesniak v. Equifax Mortg. Servs. LLC*, 2015 WL 2412119, at *6 (D.N.J. May 21, 2015) (acknowledging that one may still consent to personal jurisdiction); *Gracey v. Janssen Pharms., Inc.*, 2015 WL 2066242, at *3 n.4 (E.D. Mo. May 4, 2015) (noting that *Daimler* did not alter jurisdiction by consent); *Perrigo Co. v. Merial Ltd.*, 2015 WL 1538088, at *7 (D. Neb. Apr. 7, 2015) ("*Daimler* only speaks to whether general jurisdiction can be appropriately exercised over a foreign corporation that has not consented to suit in the forum."); *Senju Pharm. Co., Ltd. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 437 (D.N.J. Mar. 31, 2015) ("*Daimler* did not discuss instate service and there was no indication in Daimler that the defendant had registered to do business in the state or been served with process there."); *Otsuka Pharm. v. Mylan*, 2015 WL 1305764, at *9–10 (D.N.J. Mar. 23, 2015) (declining to extend *Daimler* to consent).

statute."[131]   The case originated in Delaware and the opinion concluded that *Sternberg* itself remains good law.   I fully agree with the reasoning of that concurring opinion and see no need to duplicate it here.

It may be that the United States Supreme Court will go in the same direction as the Majority.  But we won't know until it gets there.  I would not divest the trial courts of this state of significant jurisdiction unless I was sure I was right, and I am not sure the Majority is right.  I would affirm the judgment of the Superior Court.

---

[131] *Acorda*, 2016 WL 1077048, at *10 (O'Malley, J., concurring).

2