**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

Leonard Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: May 2, 2017
Date Decided: May 31, 2017

C. Barr Flinn, Esquire
Emily V. Burton, Esquire
Lakshmi A. Muthu, Esquire
Gregory J. Brodzik, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

S. Mark Hurd, Esquire
Zi-Xiang Shen, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19899

Robert J. Stern, Jr., Esquire
Blake Rohrbacher, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

> RE: ***Timothy Pagliara v. Federal National Mortgage Association***,
> Civil Action No. 12105-VCMR

Dear Counsel:

Pending before the Court is a motion to dismiss or to substitute the plaintiff in this 8 *Del. C.* § 220 proceeding. For the reasons stated herein, the motion to dismiss is granted.

## I. BACKGROUND

The facts in this letter opinion derive from Plaintiff's Verified Complaint (the "Complaint") and the documents attached to it. Plaintiff Timothy J. Pagliara is a preferred stockholder of Federal National Mortgage Association, a federally

chartered corporation governed by the "corporate governance practices and procedures of" the Delaware General Corporation Law ("Fannie Mae"). Fannie Mae was designed by the federal government to create liquidity in the mortgage market and facilitate the extension of credit to American homebuyers. Between 1968 and 1970, Fannie Mae became largely privately owned and publicly traded on the New York Stock Exchange.[1] But Fannie Mae remained subject to extensive federal regulation. In 2002, Fannie Mae's then-regulator, the Office of Federal Housing Enterprise Oversight, directed Fannie Mae to follow the "corporate governance practices and procedures of" the law of the jurisdiction containing Fannie Mae's principal office, the Delaware General Corporation Law, or the Revised Model Business Corporation Act.[2] Fannie Mae chose the Delaware General Corporation Law, and a certificate of incorporation was filed in Delaware for Federal National Mortgage Association, Inc.[3]

During the U.S. housing crisis, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA") to stabilize the mortgage market. Under HERA, Fannie Mae's regulator was replaced by the newly created Federal Housing Finance

---

[1]     Compl. ¶¶ 33-36.

[2]     *Id.* ¶ 43.

[3]     *Id.* ¶ 45, Ex. C.

Agency (the "FHFA"). HERA authorized the FHFA to put Fannie Mae into conservatorship or receivership,[4] and the FHFA placed Fannie Mae into conservatorship on September 7, 2008.[5]

On the same day, the U.S. Department of the Treasury (the "Treasury Department") entered a Preferred Stock Purchase Agreement with Fannie Mae under which Fannie Mae agreed to issue one million shares of Senior Preferred Stock to the Treasury Department. The Senior Preferred Stock had an initial liquidation preference of $1,000 per share and was senior to all other classes of Fannie Mae stock.[6] The Treasury Department also received a warrant to purchase 79.9% of Fannie Mae's common stock. The Senior Preferred Stock was entitled to a 10% cumulative cash dividend or a 12% stock dividend. The Preferred Stock Purchase Agreement was restated and then amended twice to make minor changes and to increase the Treasury Department's funding commitment to Fannie Mae.[7]

On August 17, 2012, after Fannie Mae allegedly had become profitable again, the Treasury Department and Fannie Mae entered the Third Amendment to the

---

[4]     *Id.* ¶ 55.

[5]     *Id.* ¶ 65.

[6]     *Id.* ¶¶ 84, 88.

[7]     *Id.* ¶¶ 92-95.

Restated Preferred Stock Purchase Agreement (the "Third Amendment"). The Third Amendment changed the Treasury Department's 10% dividend to a "net worth sweep" such that Fannie Mae would distribute the bulk of its quarterly net worth to the Treasury Department every quarter for an indefinite period of time.[8] As of the date of Pagliara's Complaint, the Treasury Department's Fannie Mae dividends allegedly had increased by $78.2 billion as a result of the Third Amendment.[9]

On January 19, 2016, counsel for Pagliara served a Section 220 demand on Fannie Mae, which sought documents to investigate whether the decisions to approve the Third Amendment, Fannie Mae's subsequent payment of dividends under the Third Amendment, and certain other Fannie Mae investments constituted misconduct. Pagliara also sought to communicate with other stockholders regarding the misconduct and to value his shares. Fannie Mae, through the FHFA, rejected Pagliara's demand on January 27, 2016.

On March 14, 2016, Pagliara filed the Complaint in this action, and on March 25, 2016, Fannie Mae removed the case to federal court. The U.S. District Court for the District of Delaware remanded the case on March 8, 2017, and Fannie Mae filed

---

[8]     *Id.* ¶ 119.

[9]     *Id.* ¶ 124.

a motion to dismiss or, in the alternative, to substitute the FHFA as the plaintiff on March 31, 2017. The Court heard oral argument on the motion on May 2, 2017.

## II.    ANALYSIS

Fannie Mae moves to dismiss under Court of Chancery Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim. I first consider the Rule 12(b)(2) motion because "[a] court without personal jurisdiction has no power to dismiss a complaint for failure to state a claim."[10]

### A.    Pagliara's Complaint Survives a Motion to Dismiss for Lack of Personal Jurisdiction

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of showing a *prima facie* basis for the Court's exercise of personal jurisdiction over a nonresident defendant . . . ."[11] "[W]hen no evidentiary hearing has been held, the plaintiffs' burden is a relatively light one."[12] "'[T]he record is construed in the light most favorable to the plaintiff,' and the plaintiff need not rely solely on the allegations in the complaint but may employ extra-pleading

---

[10]    *Branson v. Exide Elecs. Corp.*, 625 A.2d 267, 269 (Del. 1993).

[11]    *Ross Hldg. & Mgmt. Co. v. Advance Realty Gp., LLC*, 2010 WL 1838608, at *11 (Del. Ch. Apr. 28, 2010).

[12]    *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *3 (Del. Ch. Mar. 31, 2003).

material as a supplement to establish jurisdiction."[13]  The Delaware Supreme Court recognized in *General Parts Company v. Cepec* that a corporation is subject to general jurisdiction in its state of incorporation.[14]

The Complaint in this case sufficiently alleges a *prima facie* basis for personal jurisdiction over Fannie Mae in Delaware.  The Complaint alleges that Fannie Mae filed a certificate of incorporation in Delaware on August 21, 2002, sixteen days after the Office of Federal Housing Enterprise Oversight's corporate governance regulation requiring that Fannie Mae choose a corporation law became effective.[15] The Complaint also points to Fannie Mae's bylaws, which reference a certificate of incorporation.  The bylaws state that the inclusion of certain provisions in them "shall constitute inclusion in the corporation's 'certificate of incorporation' for all

---

[13]   *Ross Hldg.*, 2010 WL 1838608, at *11 (quoting *Cornerstone Techs.*, 2003 WL 1787959, at *3).

[14]   *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 127 (Del. 2016) ("Businesses select their states of incorporation and principal places of business with care, because they know that those jurisdictions are in fact 'home' and places where they can be sued generally.").

[15]   Compl. ¶ 45, Ex. C; *see* Corporate Governance, 67 Fed. Reg. 38,361, 38,363 (June 4, 2002) (announcing the final regulation with an effective date of August 5, 2002).

purposes of the Delaware General Corporation Law."[16]  Thus, Plaintiff argues that

the Complaint establishes a *prima facie* basis for personal jurisdiction.

Defendant responds that the certificate does not refer to Fannie Mae because

it incorporates "Federal National Mortgage Association, Inc." instead of "Federal

National Mortgage Association."  Further, Defendant argues that the certificate of

incorporation was voided in 2004 for failure to pay annual taxes.[17]  As to the legal

point, Delaware and federal courts have exercised personal jurisdiction over

defendant Delaware corporations that have not filed a certificate of dissolution but

whose certificates of incorporation were voided for failure to pay franchise taxes.[18]

---

[16]     Compl. Ex. B, § 1.05.

[17]     Section 510 of the Delaware General Corporation Law provides that if a Delaware corporation "refuses or neglects" to pay franchise taxes for one year, the corporation's certificate of incorporation "shall be void."  8 *Del. C.* § 510.

[18]     *E.g.*, *Wax v. Riverview Cemetery Co.*, 24 A.2d 431, 436 (Del. Super. 1942) ("Under our taxing statute we think that a corporation which has been proclaimed for non-payment of taxes is not completely dead.  It is in a state of coma from which it can be easily resuscitated, but until this is done its powers as a corporation are inoperative, and the exercise of these powers is a criminal offense.  It still can serve as repository of title and as obligor of a debt."); *United States v. Ne. Pharm. & Chem. Co.*, 810 F.2d 726, 746 (8th Cir. 1986) (following *Wax v. Riverview Cemetery Co.* and holding that a Delaware corporation whose charter was voided for failure to pay franchise taxes could be sued for violations of federal environmental laws); *Ross v. Venezuelan-Am. Indep. Oil Producers Ass'n*, 230 F. Supp. 701, 704 (D. Del. 1964) (following *Wax v. Riverview Cemetery Co.* and holding that a Delaware corporation whose charter was voided for failure to pay franchise taxes could be sued on a contract); *see also Sanders v. Vari*, 143 A.2d 275, 277 (Del. Ch. 1958).

As to the factual argument regarding Fannie Mae's name, the alleged facts and Defendant's arguments would be sufficient to entitle Pagliara to jurisdictional discovery to prove whether Fannie Mae is subject to personal jurisdiction in Delaware. But Plaintiff has requested that "the Court not delay this matter further for jurisdictional discovery,"[19] and Defendant has also argued against jurisdictional discovery.[20] In accordance with the parties' requests and because, for the reasons explained below, jurisdictional discovery would be futile, I address the Rule 12(b)(6) motion to dismiss.

### B. Pagliara's Complaint Is Dismissed on Issue Preclusion Grounds

Fannie Mae moves to dismiss under Court of Chancery Rule 12(b)(6) and argues that the dispositive issue in this case—whether Pagliara has a right to inspect Fannie Mae's books and records—has been decided against Pagliara in *Pagliara v. Federal Home Loan Mortgage Corporation*,[21] a case from the Eastern District of Virginia. As such, Defendant argues that this case should be dismissed on issue preclusion grounds. "This Court will grant a motion to dismiss under . . . Rule 12(b)(6) only if the 'plaintiff could not recover under any reasonably conceivable

---

[19]     Pl.'s Answering Br. 33.

[20]     Def.'s Opening Br. 10 n.7; Oral Arg. Tr. 9.

[21]     203 F. Supp. 3d 678 (E.D. Va. 2016).

set of circumstances susceptible of proof.'"[22]  On a Rule 12(b)(6) motion to dismiss, the Court "must accept as true all of the well-pleaded allegations of fact and draw reasonable inferences in the plaintiff's favor."[23]  The Court, however, is "not . . . required to accept as true conclusory allegations 'without specific supporting factual allegations.'"[24]

Federal law determines the effect of a federal judgment for issue preclusion purposes.[25]  Under federal common law, when state law is the substantive law at issue, the law of the state where a federal court sits determines the effects of that court's judgments.[26]  When federal law is the substantive law at issue, federal preclusion law determines the effect of federal court judgments.[27]  The evaluation of

---

[22]  *City of Miami Gen. Empls. v. Comstock*, 2016 WL 4464156, at *8 (Del. Ch. Aug. 24, 2016) (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011)).

[23]  *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).

[24]  *Id.* (quoting *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65–66 (Del. 1995)).

[25]  *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).

[26]  *Id.*; *see also Laborers' Dist. Council Constr. Indus. Pension Fund v. Bensoussan*, 2016 WL 3407708, at *6 (Del. Ch. June 14, 2016); *In re Wal-Mart Stores, Inc. Del. Deriv. Litig.*, 2016 WL 2908344, at *8 (Del. Ch. May 13, 2016).

[27]  RESTATEMENT (SECOND) OF JUDGMENTS § 87 cmt. b, illus. 4 (AM. LAW INST. 1982).

Fannie Mae's defense under HERA Section 4617(b)(2)(A)(i) is a question of federal law, and federal preclusion law, thus, applies. Applying federal law, the U.S. Supreme Court "regularly turns to the Restatement (Second) of Judgments for a statement of the ordinary elements of issue preclusion."[28] Pagliara also relied on the Restatement (Second) of Judgments at oral argument and in his brief.[29] Under the Restatement, a party to a prior proceeding is precluded from relitigating an issue when (1) the "issue of fact or law is actually litigated" in the prior proceeding, (2) the issue is "determined by a valid and final judgment," and (3) "the determination is essential to the judgment."[30] Section 28 of the Restatement includes an exception when "[t]he issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws."[31]

The Eastern District of Virginia's judgment in *Pagliara* is preclusive on the issue of whether Section 4617(b)(2)(A)(i) of HERA transferred the Fannie Mae

---

[28]    *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015).

[29]    Pl.'s Answering Br. 43 n.21; Oral Arg. Tr. 45.

[30]    RESTATEMENT (SECOND) OF JUDGMENTS §§ 27, 29.

[31]    *Id.* § 28.

stockholders' right to seek books and records to the FHFA. Pagliara had a full opportunity to oppose the motion to dismiss in *Pagliara*; he filed a 33-page brief on that motion; and his counsel appeared and argued at oral argument on the motion.[32] The decision was reduced to a final judgment, which Pagliara appealed.[33] Pagliara subsequently voluntarily dismissed his appeal.[34] And the interpretation of Section 4617(b)(2)(A)(i) was essential to the court's decision.[35] Pagliara's Virginia action sought books and records pursuant to Virginia corporate law from Freddie Mac, a "regulated entity"[36] under HERA like Fannie Mae. The court was faced with the question of whether Freddie Mac stockholders retained the right to obtain corporate books and records from a regulated entity pursuant to state corporate law or whether

---

[32]    Pl.'s Opp. to Mot. to Dismiss, *Pagliara v. Fed. Home Loan Mortg. Corp.*, C.A. No. 1:16-cv-00337-JCC-JFA (E.D. Va. July 19, 2016); Oral Arg. Tr., *Pagliara v. Fed. Home Loan Mortg. Corp.*, C.A. No. 1:16-cv-00337-JCC-JFA (E.D. Va. Aug. 4, 2016).

[33]    Notice of Appeal, *Pagliara v. Fed. Home Loan Mortg. Corp.*, C.A. No. 1:16-cv-00337-JCC-JFA (E.D. Va. Sept. 21, 2016).

[34]    Mot. to Dismiss Pursuant to Fed. R. of App. P. 42(b), *Pagliara v. Fed. Home Loan Mortg. Corp.*, No. 16-2090 (4th Cir. Jan. 20, 2017).

[35]    *Pagliara v. Fed. Home Loan Mortg. Corp.*, 203 F. Supp. 3d 678, 689 (E.D. Va. 2016).

[36]    12 U.S.C. § 4502(20).

Section 4617(b)(2)(A)(i) divested stockholders of that right.[37]  The *Pagliara* court could not have resolved that question without interpreting Section 4617(b)(2)(A)(i). As such, the court's determination on this issue was essential to the judgment.

Pagliara argues that the "pure legal question" exception to issue preclusion should apply to the issue of whether Section 4617(b)(2)(A)(i) transferred Fannie Mae stockholders' right to books and records to the conservator.  Pagliara asserts that the *Pagliara* opinion was rejected by the subsequent U.S. Court of Appeals for the District of Columbia Circuit opinion in *Perry Capital LLC v. Mnuchin*,[38] altering the legal context.  But *Perry Capital* considered a different issue.  *Perry Capital* addressed the legal sufficiency of stockholder direct and derivative claims against Fannie Mae and Freddie Mac arising out of the Third Amendment.[39]  The D.C. Circuit agreed with the lower court in *Perry Capital* and held that Section 4617(b)(2)(A)(i) of HERA transfers the stockholders' right to bring a derivative claim—but not a direct claim—to the FHFA in all cases, even if the FHFA has a conflict of interest.[40]  Thus, the court held that the stockholders' derivative claims

---

[37]     *Pagliara*, 203 F. Supp. 3d at 680.

[38]     848 F.3d 1072 (D.C. Cir. 2017).

[39]     *Perry Capital*, 848 F.3d at 1079-80.

[40]     *Id.* at 1104.

were properly dismissed.[41]   Because Fannie Mae stockholders retain the right to bring direct claims and a Section 220 claim is a direct claim, Pagliara argues that he should be entitled to seek books and records.   But the Eastern District of Virginia considered the derivative-versus-direct distinction in *Pagliara* and held that, while Pagliara still may enforce his rights through direct claims, he requires an underlying right in order to state a claim.  The court held that Section 4617(b)(2)(A)(i) divested Fannie Mae and Freddie Mac stockholders of the right to seek books and records and the derivative-versus-direct distinction was inapposite.   Further, unlike *Perry Capital*, *Pagliara* is the only case the parties cite that considered a stockholder action for books and records.   Thus, I do not agree that *Perry Capital* rejected *Pagliara* such that issue preclusion should not apply to this question of law.[42]

Pagliara also cites the federal district court's order in this case as new authority that has changed the legal context.  But the district court's order considered only whether there existed federal subject matter jurisdiction over this Section 220

---

[41]   *Id.* at 1106.  The court, however, did hold that the District Court should have dismissed the claims under Rule 12(b)(6) as opposed to Rule 12(b)(1).  *Id.* at 1104.

[42]   Even the stockholder plaintiffs in *Perry Capital LLC v. Mnuchin* recognized that the derivative-versus-direct distinction is a different issue from whether stockholders possess an underlying right.  Letter to Ct., *Perry Capital LLC v. Mnuchin*, No. 14-5243 (D.C. Cir. Aug. 25, 2016) ("Even if HERA deprives shareholders of their right to inspect the Companies' books and records, this 'does not affect' their 'right to bring a direct lawsuit.'").

claim. The district court found *Perry Capital* "persua[sive]" for the proposition that not "all shareholder rights are categorically preempted by § 4617(b)(2)(A)."[43] The order suggests that that point was important to the district court only because if all stockholder rights were categorically preempted by Section 4617(b)(2)(A), then all stockholder causes of action against Fannie Mae may arise under federal law, vesting the federal courts with jurisdiction over them. The district court wrote as follows:

> At most, Defendants raise a defense under federal law. . . . [A] federal defense to a state-law cause of action is not enough to establish federal question jurisdiction, and it would be improper to deprive the Chancery Court—a court very capable of interpreting federal law—of its exclusive jurisdiction over § 220 actions.[44]

The district court was not focused on the merits of Pagliara's claims; it addressed only the jurisdictional question. I disagree with Pagliara that the legal context has materially changed since *Pagliara* such that it should not be given preclusive effect.

Further, *Pagliara* and this case are not substantially unrelated because in both cases, Pagliara sought books and records for the purpose of investigating misconduct

---

[43] *Pagliara v. Fed. Nat'l Mortg. Ass'n*, C.A. No. 16-193-GMS, at 3 n.1 (D. Del. Mar. 8, 2017) (ORDER).

[44] *Id.* While a federal defense is not sufficient to vest the federal courts with federal question jurisdiction, the interpretation of HERA Section 4617(b)(2)(A)(i) is an issue of federal law, and federal law dictates the substantive rights between Pagliara and Fannie Mae in this case. Thus, I apply federal preclusion law to the judgment from the Eastern District of Virginia for this issue.

related to Treasury Department investments in Fannie Mae and Freddie Mac. The only material difference is that Pagliara sought books and records from Freddie Mac in Virginia, and here he seeks books and records from Fannie Mae. Both Freddie Mac and Fannie Mae are regulated entities under HERA, and Pagliara has pointed to no reason that these cases are substantially unrelated.

Pagliara also argues that the *Pagliara* holding regarding Section 4617(b)(2)(A)(i) was not essential to the judgment in that case because it was an alternative holding. But the federal court's holding that Section 4617(b)(2)(A)(i) bars a stockholder books and records claim was its primary holding. The court also held that even if it was wrong about Section 4617(b)(2)(A)(i), Pagliara lacked a proper purpose to inspect books and records under Virginia law. But the proper purpose holding was the court's alternative holding.[45]

Because the judgment of the Eastern District of Virginia is preclusive on the issue of whether Section 4617(b)(2)(A)(i) of HERA transferred the stockholder right to seek books and records to the FHFA, I need not consider the parties' arguments on the merits of this claim.

---

[45]     *Pagliara v. Fed. Home Loan Mortg. Corp.*, 203 F. Supp. 3d 678, 692 (E.D. Va. 2016) ("In sum, the Court concludes that Pagliara does not retain the right to inspect corporate records. Even if Pagliara did possess that right, the Court will dismiss the Complaint because Pagliara does not have a proper purpose.").

## III.    CONCLUSION

For these reasons, Defendant's Rule 12(b)(6) motion to dismiss is granted.

**IT IS SO ORDERED.**

Sincerely,

*/s/Tamika Montgomery-Reeves*
Vice Chancellor