IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GARY CUPPELS and ANNA-MARIE      :     C.A. No. S18C-06-009 RFS
CUPPELS, individually and on behalf
of all others similarly situated,      :

         Plaintiffs,      :

         v.      :

MOUNTAIRE CORPORATION,      :
an Arkansas corporation,
MOUNTAIRE FARMS, INC., a      :
Delaware corporation, and
MOUNTAIRE FARMS OF      :
DELAWARE, INC., a Delaware
corporation,      :

         Defendants.      :


ORDER CLARIFYING THE SCOPE OF JURISDICTIONAL DISCOVERY


1) This is an action plaintiffs have filed against Mountaire Corporation ("MC"), Mountaire Farms, Inc. ("MFI"), and Mountaire Farms of Delaware, Inc. ("MFODI") alleging defendants' operations of poultry processing facilities in Delaware caused pollution to the air, soil and water, which, in turn, resulted in injuries to the plaintiffs and caused diminution in the value of their properties.

2) Plaintiffs assert the following regarding MC, an Arkansas company, based upon information and belief. MC is the corporate parent of MFI and MFODI; it earns substantial revenue from the activities of MFI and MFODI in Delaware; it selects, oversees and shares common owners, board members, directors, officers and personnel of MFI and MFODI,

1

including developing, implementing, and carrying out their environmental projects, policies and compliance; it has guaranteed or otherwise acted as surety and mortgagor for certain financial obligations of MFI and MFODI; and it has purchased, used or sold real property in Sussex County, Delaware.[1] The Amended Complaint asserts that MC, MFI and MFODI:

> individually and collectively: a) participated in a material way in owning and operating the chicken processing facility and associated real property used for disposal of wastewater and sludge over the relevant time period; b) through their individual and joint direction, control, and coordination developed, implemented, and carried out the projects, policies and procedures that proximately caused the pollution and damages detailed herein; c) hired, fired, managed, supervised, and instructed employees, agents and contractors involved in the conduct described herein; d) promoted and marketed the "Mountaire" brand and products in Delaware; e) collectively and individually transacted business, solicited business, sold services and products, and entered into contracts causing them to earn revenue directly or indirectly from such business activities conducted in and directed at Delaware; and f) otherwise engaged in conduct that contributed to the pollution and damages described herein as will be uncovered in discovery.[2]

The Amended Complaint also alleges jurisdiction over MC based upon the theory of agency. Specifically, plaintiffs assert:

> 92. At all relevant times hereto, MFI and/or MFODI were agents, servants and/or otherwise under the direction, supervision, management, control and oversight of MC. Plaintiffs demand that any denial of agency be answered by affidavit in accordance with 10 *Del.C.* § 3916.
> 93. At all relevant times hereto, MC directed, supervised, managed, controlled or provided oversight to MFI and/or MFODI in their a) operating of the chicken processing facility and associated real property for disposal of wastewater and sludge; b) individual and joint direction, control, and coordination in developing, implementing and carrying out environmental projects, policies and procedures that proximately caused the pollution and damages as set forth herein; c) hired, fired, managed, supervised and instructed employees, agents and contractors involved in the conduct described herein; d) promoted and marketed the "Mountaire" brand and products in Delaware; and e) otherwise engaged in conduct that contributed to the pollution and damages described herein and that will be further learned through discovery.

---

[1] Amended Class Action Complaint ("Amended Complaint"), ¶ 3.

[2] *Id.* at ¶ 9.

94. As principal, MC has guaranteed or otherwise acted as surety and mortgagor for certain financial obligations of its agents, MFI and MFODI.

95. Through this agency relationship, MC engaged in and transacted business in Delaware and earned revenue directly or indirectly from business activities conducted by its agents, MFI and/or MFODI.

96. Pursuant to principles of agency and the doctrine of respondeat superior, the negligence, carelessness, recklessness and willful and wanton conduct of MFA and/or MFODI as set forth herein is imputed to MC making it vicariously liable for the conduct of MFI and/or MFODI.

3) MC filed a motion to dismiss the action, alleging the Court lacks personal jurisdiction over it. In affidavits submitted with the motion, MC explains it is an Arkansas corporation with its principal place of business in Arkansas. It states that MFODI owns the Millsboro poultry processing facility, including the physical facility, all spray irrigation fields and all land application fields. MC denies that the decision-making regarding the direction, control, and coordination of MC's corporate activities occur in Delaware; it states it never has owned, operated or managed the Millsboro poultry plant; and it asserts it:

> [I]s not registered to do business in Delaware, has no registered agent for service of process in Delaware, conducts no business or operations in Delaware, does not rent or own any real or personal property in Delaware, derives no revenue from Delaware, has no bank accounts in Delaware, does not advertise in Delaware, employs no salespeople soliciting business in Delaware, and warehouses no goods in Delaware.[3]

4) In a February 22, 2019 Order, the Court allowed plaintiffs the opportunity to undertake limited discovery for determining whether MC has had sufficient contact with Delaware to permit this Court to exercise personal jurisdiction over MC. This February 22, 2019 Order also allowed plaintiffs until August 20, 2019, to plead with particularity how this Court may exercise jurisdiction over MC.

---

[3] Affidavit of Janice Atterberry, dated August 21, 2018, at ⁋ 5, attached as Exhibit A to Defendants' Opening Brief in Support of Their Motion to Dismiss the Amended Complaint.

3

5) The parties have submitted a joint motion seeking clarification of the scope of jurisdictional discovery.

6) Plaintiffs maintain that their discovery is "tailored to unearth 'MC's contacts with Delaware' as the order states, with an eye towards the theories ... [of agency and conspiracy]."[4] They further argue:

> Plaintiff's discovery seeks various possible contacts MC has with Delaware (footnote omitted). The clear language of the Court's Order — "MC's contacts with Delaware" — permits inquiry into those contacts (citation omitted). And disclosure of those contacts will also lead to the discovery of more evidence relevant to whether this Court has jurisdiction over MC because of its control over, or conspiracy with, MFI and MFODI.[5]

Plaintiffs admit they are seeking information on all of MC's contacts with Delaware and explain that "[e]ven if certain contacts are not ultimately relevant to the Court's jurisdiction decision, the scope of discovery allows inquiry about those contacts."[6]

7) Defendants argue the scope of jurisdictional discovery should be limited to MC's contacts with Delaware from which the core allegations in the Amended Complaint arise; i.e., the Millsboro groundwater contamination and air pollution.

8) The rulings set forth below will guide the Court, the parties and the Special Master[7] on the scope of discovery regarding *in personam* jurisdiction over MC.

---

[4] May 1, 2019, Letter from Plaintiffs at 4.

[5] *Id.* at 4-5.

[6] *Id.* at 5.

[7] The Special Master was appointed by order dated May 14, 2019, to assist the Court and the parties in conducting and completing discovery in an orderly and efficient manner.

9) Because the burden is on plaintiffs to establish personal jurisdiction over MC,[8] they are allowed discovery to show that jurisdiction is proper.[9] However, plaintiffs are not allowed to undertake a fishing expedition in order to establish jurisdiction.[10] Instead, the discovery "must relate to the factual allegations in the Complaint and to the question of personal jurisdiction."[11] The Court may employ its discretion to delineate the appropriate scope of discovery.[12] It can limit even relevant discovery to prevent a fishing expedition.[13]

10) The starting point is 10 *Del. C.* § 3104(c), which specifies when a nonresident establishes legal presence within this State. The statute provides:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person **or through an agent**:
> > (1) Transacts any business or performs any character of work or service in the State;
> > (2) Contracts to supply services or things in this State;

---

[8] *Outokumpu Engineering Enterprises, Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 727 (Del. Super. 1996); *In re Asbestos Litigation*, 2015 WL 556434, * 3 (Del. Super. Jan. 30, 2015); *Tell v. Roman Catholic Bishops of Diocese of Allentown*, 2010 WL 1691199, *8 (Del. Super. Apr. 26, 2010); *Cale v. Amoco Chemicals Corp.*, 1988 WL 139902, *1 (Del. Super. Nov. 23, 1988).

[9] *In re: Talc Product Liability Litigation*, 2018 WL 4340012, *11 (Del. Super. Sept. 10, 2018); *Otto Candies, LLC v. KPMG LLP*, 2017 WL 3175619, *5 (Del. Super. July 26, 2017); *Reid v. Siniscalchi, L.L.C.*, 2011 WL 378795, *4 (Del. Ch. Jan. 31, 2011).

[10] *Otto Candies, LLC v. KPMG LLP*, 2017 WL 3175619, at* 5; *Reid v. Siniscalchi, L.L.C.*, 2011 WL 378795, at *4; *Sokol Holdings, Inc. v. Dorsey & Whitney, LLP*, 2009 WL 2501542, * 9 (Del. Ch. Aug. 5, 2009); *In re Tyson Foods, Inc.*, 2007 WL 2685011, *1 (Del. Ch. Sept. 11, 2007).

[11] *Reid v. Siniscalchi, L.L.C.*, 2011 WL 378795, at *4.

[12] *Otto Candies, LLC v. KPMG LLP*, 2017 WL 3175619, at * 5; *Reid v. Siniscalchi, L.L.C.*, 2011 WL 378795 (Del. Ch. Jan. 31, 2011); *Sokol Holdings, Inc. v. Dorsey & Whitney, LLP*, 2009 WL 2501542, at * 9; *In re Tyson Foods, Inc.*, 2007 WL 2685011, at *1.

[13] *Sokol Holdings, Inc. v. Dorsey & Whitney, LLP*, 2009 WL 2501542, at *9.

5

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing (emphasis added).

There are two types of jurisdiction over a nonresident: general and specific. General jurisdiction, as codified in §3104(c)(4), "is at issue when the plaintiff's claims are unconnected with the nonresidents' activities. In this instance jurisdiction is based on the relationship between the forum and one of the parties; the forum's connection with the controversy is immaterial (citations omitted)."[14] Specific jurisdiction, on the other hand, "is at issue when the plaintiff's claims arise out of acts or omissions that take place in Delaware. In this circumstance, jurisdiction is based on the relationship between the forum and the controversy (citations omitted)."[15] Subsections (1), (2), and (3) of 3104(c) are specific jurisdiction provisions.[16] So, too are subsections (5)[17] and (6).[18]

---

[14]*Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998) (TABLE), *cert. den.*, 118 S.Ct. 2345 (1998).

[15]*Id. Accord Sternberg v. O'Neill*, 550 A.2d 1105, 1117 (Del. 1988), *abrogated by Genuine Parts Company v. Cepec*, 137 A.3d 123 (Del. 2016); *Rotblut v. Terrapinn, Inc.*, 2016 WL 5539884, *4 (Del. Super. Sept. 30, 2016).

[16]*Boone v. Oy Partek Ab*, 724 A.2d at 1155 ("Sections 3104(c)(1), (c)(2), and (c)(3) have been deemed to be specific jurisdiction provisions"); *Dassen v. Boland*, 2011 WL 1225579, * 4 (Del. Super. Mar. 23, 2011); *Tell v. Roman Catholic Bishops of Diocese of Allentown*, 2010 WL 1691199, at *8.

[17] *Otto Candies, LLC v. KPMP LLP*, 2019 WL 994050, * 12 (Del. Ch. Feb. 28, 2019).

[18] *Stephens v. Bank of Delaware*, 1993 WL 81282, *3 n. 2 (Del. Super. 1993).

11) The law has evolved over the years with regard to general jurisdiction. The current state of the law is that general jurisdiction exists, with rare exceptions, only over those entities that are organized in Delaware or have chosen Delaware for their principal place of business.[19] The analysis

> "is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to *render [it] essentially at home in the forum State*." The Court noted that the "paradigm" fora for general jurisdiction over a corporation are its place of incorporation and its principal place of business because those affiliations are "unique" and "easily ascertainable." But it also acknowledged that general jurisdiction might, "*in an exceptional case*," be proper outside of those one or two places where the corporation's operations are "so substantial and of such a nature as to *render the corporation at home in that State*."[20]

In this case, plaintiffs have not alleged in their complaint any facts which might support a finding that there is some exceptional situation which renders MC subject to general jurisdiction.[21] It is clear that "merely engaging in a 'substantial, continuous and systematic course of business' unrelated to the lawsuit is not exceptional (footnote and citation omitted)."[22]

12) Plaintiffs, in taking the position that they can explore every contact MC has had with Delaware, are undertaking a fishing expedition, apparently with the hope that they can establish

---

[19]*In re: Talc Product Liability Litigation*, 2018 WL 4340012, at *6.

[20]*Genuine Parts Company v. Cepec*, 137 A.3d at 135 (emphasis in original), *quoting Daimler AG v. Bauman*, 134 S.Ct. 746, 760, 771, 187 L. Ed.2d 624 (2014).

[21] The status as a parent corporation with an allegedly at-fault subsidiary incorporated in Delaware does not give jurisdiction over the parent. *Outokumpu Engineering Enterprises, Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d at 731; *Herman v. BRP, Inc.*, 2015 WL 1733805, *4 (Del. Super. Apr. 13, 2015); *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, *11 (Del. Ch. Sept. 2, 2008).

[22]*In re: Talc Product Liability Litigation*, 2018 WL 4340012, at *5.

general jurisdiction. Because no reason exists to think MC is subject to general jurisdiction under the current state of the law, the Court will not allow such broad discovery.[23] Thus, plaintiffs must limit their discovery to determining if specific jurisdiction over MC exists.

13) In conducting discovery, the following rules should guide the parties. As explained in the Special Master's Order in *Otto Candies*:

> In looking at whether an act "gives rise" to a cause of action for purposes of establishing specific jurisdiction, Delaware courts look to the "nature of the acts giving rise to a claim, rather than the nature of the claims, that determines whether a cause of action arises from contacts with the forum (citations omitted)."[24]

Furthermore, "[U]nder Delaware law, it is not sufficient that an act "relate to" the causes of action alleged; rather, it must be alleged that the act "set in motion" a "series of events" that could give rise to the causes of action (citation omitted)."[25] And, as explained in *Reid v. Siniscalchi, L.L.C.*:[26]

> [W]here jurisdictional discovery is inextricably intertwined with the merits of the action, "some discovery on the merits may be necessary and should be permitted" at the jurisdictional discovery stage. Such an allowance, however, does not confer an unconditional right - our case law only recognizes that *some* merits discovery may be permissible where it overlaps with jurisdictional discovery. ... The discovery sought, however, must be reasonably calculated to lead to evidence supporting specific jurisdiction over the ... [defendant] ... (footnote and citation omitted; emphasis in original).

14) Another issue that this pending review has raised concerns plaintiffs' assertions they have alleged a conspiracy theory of jurisdiction. The elements of a

---

[23] *Id.* at *11; *Tell v. Roman Catholic Bishops of Diocese of Allentown*, 2010 WL 1691199, at *7.

[24] *Otto Candies, LLC v. KPMG, LLP*, Del. Ch., Chandler, Special Master (April 24, 2017) at 23, *adopted*, 2017 WL 3175619 (Del. Super. July 26, 2017).

[25] *Id.* at * 24 (footnotes and citations omitted).

[26] 2011 WL 378795, at *6.

8

conspiracy theory are not alleged in the complaint.[27] In particular, at this time, no assertion of specific factual evidence to show that the defendants were conspirators in some wrongful act resulting in harm to plaintiffs has been made, a requirement of the theory.[28] Plaintiffs have, however, asserted claims related to the agency theory and they may pursue discovery to develop facts to support that theory.[29]

AND, NOW, TO WIT, THIS 29th DAY OF MAY, 2019, BASED ON THE FOREGOING, IT IS HEREBY ORDERED AS FOLLOWS:

1)      Plaintiffs may not conduct discovery on whether general jurisdiction over MC exists; and

---

[27] *Hercules Inc. v. Leu Trust and Banking (Bahamas) Ltd.*, 611 A.2d 476, 482 (Del. 1992), *cert. dism.* 507 U.S. 1025 (1993); *In re Talc Product Liability Litigation*, 2018 WL 4340012, at * 9; *iBio, Inc. v. Fraunhofer-Gesellschaft zur Forderung der Angewandten Forschung E.V.*, 2018 WL 6493503, *3 (Del. Ch. Dec. 10, 2018); *Amaysing Technologies Corp. v. Cyberair Communications, Inc.*, 2005 WL 578972, ** 6-7 (Del. Ch. Mar. 3, 2005). Even if the theory was alleged, there is another hurdle to overcome which the Court does not explore at this time: whether a parent can conspire with its subsidiary. *In re Asbestos Litigation*, 509 A.2d 1116, 1120 n.2 (Del. Super 1986), *aff'd Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987); *Amaysing Technologies Corp. v. Cyberair Communications, Inc.*, *supra* at 7.

[28] *In re: Talc Product Liability Litigation*, 2018 WL 4340012, at *9; *iBio, Inc. v. Fraunhofer-Gesellschaft zur Forderung der Angewandten Forschung E.V.*, 2018 WL 6493503, at *3; *Reid v. Siniscalchi*, 2011 WL 378795, at *5.

[29] If agency exists, the conduct of MFI and/or MFODI may render MC liable. *Outokumpu Engineering Enterprises, Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d at 729-30; *Dassen v. Boland*, 2011 WL 1225579 at *5; *Tell v. Roman Catholic Bishops of Diocese of Allentown*, 2010 WL 1691199, at *9; *Gould v. Gould*, 2011 WL 141168, *9 (Del. Ch. Jan. 7, 2011). If the agency theory does not apply, then MC's conduct must establish jurisdiction. *Dassen v. Boland*, *supra* at 4; *Tell v. Roman Catholic Bishops of Diocese of Allentown*, *supra*; *Cale v. Amoco Chemicals Corp.*, 1988 WL 139902 at *6.

9

2)        Plaintiffs may conduct discovery to support a claim or claims that specific jurisdiction over MC exists.

_____
JUDGE

cc: Prothonotary's Office
    Counsel of Record
    David A. White, Esquire, Special Master

FILED PROTHONOTARY
SUSSEX COUNTY
2019 MAY 29 A 11: 27

10